STATE *ex rel.* N. R. BARHAM, COMPLAINANT, APPELLANT, *v.*
EDGAR J. GRAHAM, COMPTROLLER, ETC., DEFENDANT,
APPELLEE.

STATE *ex rel.* W. H. DENISON, COMPLAINANT, APPELLEE, *v.*
EDGAR J. GRAHAM, COMPTROLLER, ETC., DEFENDANT,
APPELLANT.

(*Nashville.* December Term, 1929.)

Opinion filed July 19, 1930. Petition to rehear denied December
13, 1930.

558

C. W. Hewgley, for Barham.

J. C. R. McCall, for Denison.

L. D. Smith, Attorney-General, and R. E. Maiden, for Graham, Comptroller.

Mr. Justice McKinney delivered the opinion of the Court.

These causes, while not consolidated, were heard at the same time and will be disposed of in one opinion. The controversy is with respect to the salary of the office of Judge of the Twelfth Judicial Circuit of Tennessee from September 1, 1926, to June 1, 1929, during which time a contest was pending between relators as to which was entitled to the office, and which contest was finally decided favorably to Denison by this court about the latter date.

At the August election, in 1918, Barham was elected judge for eight years, beginning September 1, 1918. At the August election, 1926, he was opposed by Denison. Upon the face of the returns Denison received thirty-eight more votes than Barham. The latter immediately instituted contest proceedings. The governor, upon advice of the attorney-general, declined to issue a certificate of election to either; and, under authority of chapter 73, Acts of 1870-71, appointed England temporary judge, who qualified and performed the duties of the office from September 1, 1926, until June 1, 1929, when the contest was finally determined, and received the salary for the period of his services.

On the —— day of September, 1926, Edgar J. Graham, Comptroller of the State, filed a bill against Eng-

land, under the declaratory judgments act, setting forth the facts hereinabove detailed. After quoting section 5 of article 7 of the constitution, the bill alleged the following:

"The Attorney-General for the State has ruled that under this constitutional provision N. R. Barham is still entitled to regularly draw his salary each month as Circuit Judge for the 12th Judicial Circuit, taking the view that during the pendency of the election contest the term of office of the said N. R. Barham has not ended, but, owing to the existence of said contest, he is temporarily disqualified to perform the functions of that office, remaining entitled to receive the emoluments thereof."

The bill further averred:

"Petitioner is advised that under Chapter 29 of the Public Acts of Tennessee for the year 1923, he is entitled to file this petition and to have Your Honor declare his status, duties and obligations in the situation hereinabove described. He is advised that because of the rights and legal status of the defendant J. A. England he is a proper party defendant, and that upon this petition Your Honor will be empowered to construe Chapter 73 of the Public Acts of Tennessee for the year 1870-71, determine its constitutionality and its correct meaning, and declare whether or not under the authority of such act your petitioner, during the pendency of the election contest hereinabove mentioned, may lawfully draw his warrant payable to the defendant J. A. England for an amount equalling the regular salary of a Circuit Judge, and may during said period also draw his warrant payable to N. R. Barham for the same salary."

It will thus be seen that every question which is now raised by Barham was submitted to the court in that case,

and necessarily had to be considered in passing upon the matters involved, and was determined adversely to Barham's present contention, as appears from the published opinion found in 154 Tenn., 435.

In *Morrison* v. *Gower,* 154 Tenn., 624, the validity of the Act of 1870-71 was again questioned and its validity reaffirmed. In that case the question of the salary of a hold over was not involved. The court inadvertently stated that, "In the case of *Graham* v. *England,* the right only of the temporary appointee to compensation was involved," overlooking for the moment that the comptroller had asked for and had been given instructions as to paying a salary to the hold over judge. This explanation is made to meet the insistence that the court decided questions which were not involved.

It is true that Barham was not a party to the Graham bill, and the holding in that case is not *res adjudicata* as to him, and, if decided wrongly, should be corrected. At that time the court could not know who would be successful in the contest, and, after an investigation of the authorities, undertook to settle the legal points so that when the contest was concluded the controversy would be at an end.

After carefully considering the able argument and exhaustive brief filed by counsel for Barham, on a re-examination of the authorities, we must adhere to our original opinion, which we consider sound in law and just to all parties.

█ It is earnestly contended by counsel for Barham that the Act of 1870-71 is unconstitutional; but that if valid, it does not deprive him of his title to the office, as hold over judge, and to the salary incident thereto.

The provisions of the constitution directly involved are as follows:

Article 6, section 4. "The judges of the circuit and chancery courts, and of other inferior courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every judge of such courts shall be thirty years of age, and shall before his election, have been a resident of the state for five years, and of the circuit or district one year. His term of service shall be eight years."

Article 7, section 5. "Elections for judicial and other civil officers shall be held on the first Thursday in August, one thousand eight hundred and seventy, and forever thereafter on the first Thursday in August next preceding the expiration of their respective terms of service.

"The term of each officer so elected shall be computed from the first day of September next succeeding his election. The term of office of the governor and of other executive officers shall be computed from the fifteenth of January next after the election of the governor. No appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term. Every officer shall hold his office until his successor is elected or appointed, and qualified."

It is upon the last sentence quoted that Barham bases his right to the salary pending the contest.

Chapter 73, Acts of 1870-71, is in this language:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the Governor be, and is hereby authorized to appoint a temporary judge, chancellor or Attorney-General in all cases where a contest has arisen, or may hereafter arise, in the election of any of said officers; and that they hold said offices and have all the power and jurisdiction pertaining to the offices to which they are respectively appointed, until

the contest is judicially determined and the regularly elected officers duly qualified and commissioned; and that they be, and are hereby clothed with the same power, and shall receive the same compensation as is allowed said officers in other cases, to be paid out of the state treasury upon a warrant of the comptroller.''

As to the intent of the legislature in enacting this statute the court, in *Morrison* v. *Gower*, said:

''It must be read and considered in view of the objects designed and the purpose intended by the legislature, for the intention of the legislature is controlling. The object of the legislature was to require the appointment of a temporary judge to preside in the State courts while the judge otherwise authorized to hold over is rendered incompetent in consequence of his involvement in a litigated contest over the office. It would seem that, if the incumbent is not engaged in the contest and not interested in the result of it, the temporary appointment is unauthorized.''

It appears from our reports that several such contests were pending when this statute was enacted; and by its passage the legislature declared the policy of the State to be that a circuit judge engaged in an election contest was incompetent to preside over the court, and that the governor should appoint a successor to preside until the termination of the contest.

Article 6 of the constitution deals exclusively with the judiciary, and provides that the term of a circuit judge shall be eight years, and his right to the office is guaranteed to him for that period. Article 7 relates to state and county officers generally, and provides for filling vacancies.

At common law, if a successor to the incumbent did not qualify when the latter's term expired, the incumbent

could not hold over, and a *hiatus* in government was thereby created. Under practically all of the authorities the hold over provision was inserted to avoid this situation. It often happened that the officer elect was unable to complete his bond, or do some other qualifying act, on the day that his term was to begin. The delay was, perhaps, for only a few days, and in order that the office might be kept open and continue to function this hold over provision was inserted. The members of the convention were not considering the interest of the incumbent, or undertaking to extend his term, but had in mind only the public convenience and the prevention of interruption in the public service. Article 6 was dealing with the right and title to the office; article 7 with the public interest. This being true, the officer takes a vested interest in the office only for the term fixed by the constitution. The legislature has power to enact all laws not prohibited by the constitution. Here there is no prohibition against providing for a special judge to succeed the hold over judge where he is engaged in an election contest. By the passage of the Act of 1870-71 the legislature provided the machinery for appointing a temporary successor to Barham, who was incompetent. The requirement of the constitution that the office should be kept open was complied with, and the hold over judge was deprived of no constitutional right. He held his office, as guaranteed to him, for the full term; he was primarily responsible for the failure of his successor to take over the office upon the expiration of his term; he was incompetent to perform the duties of the office, and in fact rendered no services to the State. In these circumstances it would be inequitable to direct the comptroller to pay him out of the public funds the salary of the office pending the contest, which amounts to $13,750.

The practical result would be the payment of this salary to each of three judges, when only one of them performed any services. Such, in our opinion, was not intended by the legislature.

The right of Barham to the salary involves only one proposition, viz., whether a hold over judge has, under the constitution, such a vested interest in the office as that the legislature is without power to deprive him thereof in such circumstances as this record presents. There are cases which hold that the hold over period is as much a part of the incumbent's term of office as the fixed constitutional period. We are unwilling to adopt this construction, for the reasons heretofore stated. In *Graham* v. *England, supra,* the court approved cases giving the hold over provision a contrary construction.

In *The State* v. *Cocke,* 54 Tex., 485, the court said:

"The primary object of this provision, that the incumbent is entitled to hold the office until his successor is elected or qualified, is simply to prevent, on grounds of public necessity, a vacancy in fact in office until the newly elected or appointed officer can have a reasonable time within which to qualify. The right of the officer who thus holds over is by sufferance, rather than from any intrinsic title to the office."

In *Rightmire* v. *Camden,* 50 N. J. Law, 48, the opinion contained this recitation:

"Such a provision was not designed to extend the tenure of office of the incumbent beyond the specified term for his benefit. Its purpose was to conserve the public interests, that there might be no vacancy in office through the delay of the successor to qualify. An incumbent holding the office under such circumstances is in by the sufferance of the person who, being chosen to the

office, has failed to assume its duties, and the term so protracted is to the detriment of the latter in abridging his own term of office.''

In *Johnson* v. *Mann*, 77 Va., 271, the following appears:

''The plain unequivocal import of this section of the constitution is, that when the regular term expires, the office becomes in the eye of the constitution, vacant, but with authority to the incumbent already qualified, to continue by virtue of such previous qualification, made effective for the purpose of the constitution, to discharge the functions of the office until he is succeeded in the way preferred by the people, as pointed out in the constitution made by them, and in the laws made in pursuance of that instrument. The petitioner filled out his regular term; and under the constitutional provision being considered is, to prevent the evils which would flow from either an accidental or designed failure to qualify on the part of the person elected to succeed him, enabled to go on in the discharge of the duties appertaining to the office, not his office, so far into the succeeding regular term, as the time when his successor, legally selected, shall be fully equipped as an officer to take charge of the office and perform its functions.''

In *Prowell* v. *State*, 142 Ala., 83, the court limited the hold over provision to a reasonable time, thereby refuting the idea that the hold over had a vested right to the office until his successor qualified. The court said:

''We regard it as the settled law of this State that the words 'until his successor is elected and qualified' was never intended to prolong the term of office beyond a reasonable time, after the election, to enable the newly elected officer to qualify.

''After the expiration of such reasonable time, the office would become vacant,''

In *Stephens* v. *Wyatt, etc.*, 55 Ky., 549, the following statement was made:

"The term of office for the county judge, as well as all others created by the constitution is definite. The continuation in office after the expiration of the .term, though a right pertaining to the incumbent, and of which he cannot, except in the mode prescribed by law, be deprived, is not, properly speaking, a part of the term. Such continuation was manifestly designed to obviate any inconveniences that might attend vacancies occurring between the expiration of the term of the incumbent and the qualification of his successor."

In *People* v. *Reid*, 6 Cal., 289, the court said:

"And the words 'and until his successor is appointed and qualified,' were only incorporated to prevent a *hiatus* or *interregnum* occurring between the day of the termination of the office, and the date upon which the successor enters upon its duties. From the day on which the term expires by limitation, to the date of the induction of his successor, he is a mere *locum tenens*."

In *State* v. *Williams* (Mo.), 17 Ann. Cas., 1006, the Texas, New Jersey, Virginia and Alabama cases, referred to above, were approved and followed.

While this court has held to the contrary, in a number of jurisdictions it has been declared that, notwithstanding the hold over provision, the failure of the successor to qualify creates a vacancy.

In still other jurisdictions statutes were held valid which provided that failure of a successor to qualify within a stated period created a vacancy. The effect of the statute here involved is to create a vacancy and authorize the appointment of a temporary successor where the hold over judge is incompetent by virtue of the fact

that he is engaged in a contest for the office. That Barham instituted this contest proceeding in good faith cannot be questioned. However, as pointed out in *Graham* v. *England, supra,* if the construction of article 7, section 5, contended for was adopted, the practical result would be that a judge, by instituting contest proceedings, could hold on to the office and draw the salary for several years, regardless of his motive.

We conclude therefore, as we did in our previous decisions, that the Act of 1870-71 is valid; that it deprives the hold over judge of no title conferred by the constitution, and that when England was appointed and qualified as Barham's successor the latter's tenure of office was ended.

■ With respect to the right of Denison to draw the salary for the time that he was wrongfully kept out of office, we hold, as we did in *Graham* v. *England,* that he is entitled to the salary. The State is not resisting this claim and could not do so.

By the proceedings stated hereinabove Denison was as effectively kept out of office as if he had been restrained by injunction. In such circumstances the authorities are practically unanimous in holding that the salary follows the title to the office, and that upon a termination of the contest proceedings the successful party is entitled to the salary from the beginning of the term for which he was elected. When the officer elect voluntarily delays qualifying and entering upon his duties, he would only be entitled to the salary from the time that he takes charge of the office.

The fact that Denison did not take the oath of office until the contest was settled should not deprive him of the salary. The stipulation upon which the Denison cause was tried contains this provision:

"It is agreed that relator was, on the 1st day of September, 1926, and has been at all times since that date up to the time said contest proceedings were finally determined by the decree of the Supreme Court as hereinbefore stated, present, ready, willing and able to take the oath of office as Judge of the Twelfth Judicial Circuit and to perform and discharge the duties of said office."

Shannon's Code, section 5704, provides: "Before entering upon the duties of his office, each judge or chancellor shall take the oath," etc. The situation would not be changed by taking the oath where the officer is prevented from entering upon the duties of his office. The law does not require useless acts.

The authorities generally hold that in case of contest it is not necessary to qualify until the question of title is determined. 22 R. C. L., 451.

Section 5705 of Shannon's Code provides that judges and chancellors shall not practice law and appear as counsel in the courts of this State. This refers to an acting judge, one who has qualified and is performing the duties of his office. *In re Wheelock*, 200 N. Y. Supp., 159.

It is no defense to the claim for salary of the wrongfully excluded *de jure* officer during the period of exclusion, that he drew an income from some other source. 22 R. C. L., 5256.

From what we have said, it follows that the decrees in both causes will be reversed; the bill of Barham dismissed at his cost; and that of Denison sustained, and a decree entered in his favor for the salary sued for.