STATE, *ex rel.* JOHN W. WILLIAMS, v. J. M. LEE, as Comptroller.

164 So. 536.
Division B.
Opinion Filed December 3, 1935.

*James N. Daniel,* for Relators;

*Cary D. Landis,* Attorney General, and *Ira A. Hutchison,* Assistant, for Respondent.

BUFORD, J.—This is an original proceeding in mandamus and is before us on motion to quash the alternative writ.

In short, the alternative writ alleges that John W. Williams in December, 1932, was appointed and commissioned by the Governor of Florida as an Assistant State Auditor for a term of four years; that he immediately entered upon the duties of the office and duly performed the same until May 31st, 1935, except during two periods of time when he was suspended from office by the Governor. That he was suspended from office by the Governor on

March 29, 1933, and reinstated on the 15th day of August, 1933, that he was again suspended by the Governor on the 16th day of August, 1934, and was reinstated by the action of the Senate in refusing to sustain the suspension on the 31st day of May, 1935, and that immediately after being so reinstated he resigned from the said office. It alleges that there is due him for the periods during which he was suspended the sum of $2758.32. It alleges that during all the time from the date of his appointment to May 31, 1935, the salary fixed by statute to be received by Assistant State Auditors was $250.00 per month, but that for the month of February, 1933, he was paid only $225.00; for the month of March, 1933, he was paid only the sum of $210.00; for the month of May, 1933, $212.50; for the months of June, July, August, September, October, November and December, 1933, and January and February of 1934, he was paid only $225.00 per month for each month and for the months of March, April, May, June and July, 1934, he was paid $200.00 for each month; for the month of August, 1934, he was paid $159.72. Therefore, he claims that there is due him for unpaid salary for those months for which he received a part of the salary the sum of $459.44. He alleged that he has made demand upon the State Comptroller for the payment of the sum of $459.44 due him as aforesaid, as well as for the sum of $2758.32; that he has made his requisition for such amounts but that the Comptroller has refused to draw a warrant on the State Treasurer for either of said amounts.

The alternative writ required the Comptroller to draw his warrant on the State Treasurer for the respective amounts named or show cause why he should not do so.

The Comptroller filed motion to quash the alternative writ upon the following grounds, to-wit:

"1. That the allegations in the alternative writ fail to show a duty which the respondent is by law required to perform and in which he has failed of performance.

"2. That the allegations of the writ fail to show that there are any funds or money in the Treasury of the State of Florida appropriated for and applicable to the payment of the claim of relator.

"3. That the allegations of said writ set out a claim of the relator against the State of Florida but fail to allege or show that the Legislature has made any appropriation or provision for the payment of said claim as required by Article 16, Section 11, of the Constitution of Florida."

The first ground of the motion must be overruled because Chapter 12279, Acts of 1927, created the State Auditing Department of the State of Florida and provided for the appointment of a State Auditor and ten Assistant State Auditors. See Section 229 to 237, inclusive, C. G. L.

Section 234, C. G. L., being Section 8 of Chapter 12279, fixed the salary of State Auditor at $4500.00 per annum, payable monthly, and each of the Assistant State Auditor's salary at $3600.00 per annum. Section 237 C. G. L., being Section 11 of Chapter 12279, Acts of 1927, provided as follows:

"For the purpose of carrying out the provisions of this Article there is hereby appropriated annually, out of any funds in the State Treasury not otherwise appropriated, the following amounts:

"Salary of the State Auditor and ten assistants $34,000.00
Two stenographers and typists ............................ 3,600.00
Incidental expenses ............................................ 6,500.00
For emergency audits ........................................ 10,000.00
Traveling expenses of auditors ........................ 14,500.00

"The general printing for the auditing department shall be paid out of the general fund appropriated for printing and advertising.

"The State Auditor shall approve all bills for salaries and traveling expenses before same shall be paid."

Chapter 15719, Acts of 1931, appropriated as annual salary of $30,000.00 for ten assistant state auditors, equivalent to a salary of $3,000.00 annually for each assistant auditor.

Chapter 15858, Acts of 1933, appropriated salaries for the State Auditing Department in the sum of $66,350.00. In this Act the salaries were not itemized, so we are not advised as to how much was appropriated for each of the assistant state auditors. The appropriation covered the biennium from July 1, 1933, to July 1, 1935, but the provisions contained in Section 237 C. G. L., *supra,* are sufficient to constitute a continuing appropriation, unless some appropriation was definitely made for a lesser sum, and as the appropriation made in Chapter 15719, Acts of 1931, was for a lesser sum for each assistant state auditor, that is $3000.00 per year, we must assume that this was the last legislative expression limiting the salary to be paid to assistant state auditors.

Section 15, Article IV, of our Constitution, which authorizes the suspension or removal of officers, provides, amongst other things:

"No officer suspended who shall under this section resume the duties of his office, shall suffer any loss of salary or other compensation in consequence of such suspension."

Sec. 23 of Article IV provides:

"The Comptroller shall examine, audit, adjust and settle the accounts of all officers of the State and perform such other duties as may be prescribed by law."

Section 3 of Article XVI provides:

"The salary of each officer shall be payable monthly upon his own requisition."

Section 11 of Article XVI is not an inhibition against the payment of this claim because it is not a claim for extra compensation nor is it a claim for money which has not been already appropriated under general law.

In our Advisory Opinion to the Governor of April 14, 1934, 114 Fla. 520, 154 Sou. 154, we said:

"Under Section 23 of Article 4 of the Constitution the Comptroller is required to examine, audit, adjust and settle accounts of all officers of the State, while under Section 24 of the same article it is made his duty to issue all orders pursuant to which disbursements of any funds are to be made by the state treasurer who is authorized to pay out funds from the state treasury only when the comptroller's warrants have been countersigned by the Governor as provided for in said Section 24 of Article 4 of the Constitution.

"Under Section 3 of Article 16 it is provided that the salary of each officer shall be payable monthly upon his own requisition. Circuit Judges and state attorneys are constitutional officers. Section 8 of Article 5; Section 15, Article 5. Court reporters are of statutory creation. Chapter 11976, Acts of 1927, Section 4872 C. G. L. The salaries of circuit judges, state attorneys and of official court reporters have been fixed by law. Chapter 15859, Acts of 1933.

"Your communication states that there is in the general fund in the state treasury sufficient moneys available to pay the amounts of the salaries of circuit judges, state attorneys and official court reporters for the month of April, 1934, notwithstanding the fact that the payment of such

salaries at this time will exceed the total amount specifically appropriated for such salaries under the heading, 'Judicial Department' in the 1933 General Appropriation Act. Chapter 15858, Acts of 1933.

"Our opinion is that, where an office exists under the law and an occupant thereof has been appointed and qualified and has performed the duties of the office for a particular monthly period for which he claims compensation payable under a statute specifically fixing the amount of salary to which such officer shall be entitled to be paid when and after he has performed the constitutional or statutory duties of the office for the period for which compensation is claimed, that Section 3 of Article 16, providing that the salary of each officer shall be payable monthly upon his own requisition authorizes the payment of the salary of the officer as fixed by law, irrespective of the amount named or specified in the general appropriation Act of the Legislature.

"The restrictions of the Constitution found in Section 4 of Article 9 to the effect that no money shall be drawn from the treasury except in pursuance of appropriations made by law must be construed in connection with the equally cogent provision of Section 3 of Article 16 to the effect that every officer shall be entitled to receive his salary monthly upon his own requisition.

"The effect of Section 3 of Article 16 is to make disbursable by way of a constitutional appropriation out of any available moneys in the state treasury in the general state funds, the amounts of salaries fixed by law for state officers to receive, which salaries, after being so fixed by statute, then become payable monthly upon the officers' requisition as provided in Section 3 of Article 16 of the Constitution of Florida."

While Advisory Opinions do not necessarily control in litigated cases, they have a persuasive value, and we think the rule as stated in that opinion is applicable to the case at bar, and therefore, disposes of not only ground 1 of the motion to quash, but also of grounds 2 and 3 of that motion.

It is contended by the respondent that because the relator alleges that immediately after he had been reinstated by the action of the State Senate on May 31, 1935, he resigned as Assistant State Auditor, that he is not entitled to the benefits of the provision of Section 15 of Article IV above quoted, because it is not shown that he *resumed* the duties of his office.

We think this position is entirely untenable. In law he resumed the duties of his office as soon as he was reinstated, but instead of insisting upon performing the duties of that office and disrupting the organization which had probably been effectuated during his suspension, he tendered his resignation. It appears to us that under the conditions which the alternative writ shows to have existed, the relator pursued the proper course. He had been vindicated by the action of the Senate and thereby continued in office. His right to the salary during the time of suspension is not based upon the performance of work after reinstatement but the right to that salary accrues as soon as the officer is reinstated, either by the act of the Governor or by the act of the Senate, and it is not contemplated that an inferior officer should force his association and services upon his superiors in office and the Chief Executive when it is apparent that such services are not wanted by those higher in authority and he may at any time resign without forfeiting his right to compensation as provided by law for the period between the date of his suspension and that of his resignation.

For the reasons stated, the motion to quash should be denied and unless answer, or return, is filed within fifteen days from the entry of this order, peremptory writ will issue.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.