453 So.2d 819 (1984)
Evelyn R. FLACK, Petitioner,
v.
Bob GRAHAM and Gerald Lewis, Respondents.
No. 63919.
Supreme Court of Florida.
July 26, 1984.
*820 Rivers Buford, Jr. and Keith J. Kinderman, Tallahassee, for petitioner.
Jim Smith, Atty. Gen. and Walter M. Meginniss, Asst. Atty. Gen., Tallahassee, for respondents.
ADKINS, Justice.
Petitioner, Evelyn Flack, seeks a writ of mandamus to compel the respondents to disburse state funds sufficient to recompense her for back salary unpaid by the comptroller as a result of an election contest. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const.
Petitioner was involved in a contest for re-election to the office of county judge for Wakulla County in 1978. The county canvassing board declared her opponent, J. Michael Carter, the winner. Petitioner then instituted a challenge to the validity of several absentee ballots. Approximately forty-six months after the original election petitioner ultimately prevailed in her litigation and was declared the election winner. Wakulla County Absentee Voter Intervenors v. Flack, 419 So.2d 1124 (Fla. 1st DCA 1982), review denied, 427 So.2d 738 (Fla. 1983). Her commission was issued on September 3, 1982, entitling her to serve "for a term of four years from the First Tuesday after the First Monday in January, A.D. 1979."
By petition for writ of mandamus, petitioner now seeks back pay (plus interest) representing the salary she would have received had she fully served her term of office. The record reflects that Carter served as de facto county judge during that period and received the salary appropriate to the office.
We determined that the petition demonstrated a preliminary basis for relief and we ordered the respondents to show cause why petitioner's request should not be granted. Respondents have filed their response denying petitioner's right to the requested compensation.
Our determination of this case involves two issues: 1) whether there is a source from which compensation for the petitioner can be made available and, 2) whether the petitioner has a legal right to such compensation.
The first issue is superficially guided by the constitutional prohibitions of article VII, section 1(c) and article V, section 14, Florida Constitution. Article VII, section 1(c) states that "[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law." Article V, section 14, similarly states that the "judiciary shall have no power to fix appropriations." Inasmuch as the funds for the salary of the Wakulla County Judge were legislatively appropriated and paid, there are no funds remaining from statutorily fixed appropriations to pay the salary requested by petitioner.
This Court has, however, previously addressed the question of the source of the funds. In State ex rel. Williams v. Lee, 121 Fla. 815, 164 So. 536 (1935), we held that the constitutional proscription against appropriations from the treasury except by law, article IX, section 4, Florida Constitution (1885), now article VII, section 1(c), must be construed in conjunction with the constitutional requirement that salaries be duly paid. Art. XVI, § 3, Fla. Const. (1885). By reading these two provisions in pari materia, a constitutional appropriation was created requiring that salaries be paid "out of any available moneys in the state treasury in the general state funds." Williams, 121 Fla. 820, 164 So. at 538. Recognition of the constitutional appropriation provides a basis for judicial appropriations and satisfies the requirement that money drawn from the treasury be done so only pursuant to appropriation by law.
Although section 3 of article XVI was not adopted in the 1968 constitutional revision, it continues as a statute until altered or amended by statute or found inconsistent with the revision. Art. XII, § 10, Fla. Const. (1968). Respondents have not identified inconsistencies or alterations; *821 nor have we located any such inconsistencies or alterations. Therefore, article XVI, section 3 of the 1885 Constitution is presently in full force and effect as a statute.
The result is that Williams remains viable and, if petitioner is entitled to the back salary sought, a constitutional appropriation makes the desired funds available from the general treasury. We find further support for our holding on this issue in Wright v. MacVicar, 88 So.2d 541 (Fla. 1956); and In re Opinion of the Justices, 145 Fla. 375, 376, 199 So. 350, 351 (1940).
The second issue, whether petitioner has a legal right to the salary requested because she was the de jure officer, requires us to review two distinct lines of authority. It has been stated that a majority of jurisdictions hold that the payment of salary to a de facto officer is a valid defense to an action brought by a de jure officer where the de jure officer was not performing the duties of his or her position. Annot., 64 A.L.R.2d 1376 (1959). See Irwin v. Jefferson County, 228 Ala. 609, 154 So. 589 (1934); People ex rel. Hilger v. Myers, 114 Ill. App.2d 478, 252 N.E.2d 924 (1969); Hittell v. City of Chicago, 327 Ill. 443, 158 N.E. 683 (1927). The reasoning supporting the majority view includes the following: where the governmental entity has received only one service, it should pay only one person; that efficiency requires officers to be promptly paid for their services, and that the disbursing officer should be able to rely on the apparent authority of the de facto officer's title in paying the appropriated salary; that since the de jure officer has no property or contract right in his office, he or she should perform the required services prior to recovering a salary; and that public policy precludes payment of back salary to the de jure officer.
The minority view, which is gaining in acceptance, has various rationales stated for its support. First, as we have held in Hanchey v. State ex rel. Roberts, 52 So.2d 429, 432 (Fla. 1951), although the de facto officer receives his or her salary on the basis of services performed, an officer's salary is in actuality an incident to the office and therefore belongs to the person holding legal title. Second, the public good is not served when a public officer, legally entitled to office and a salary, does not receive the salary and it is better for the public treasury to ultimately respond to the de jure officer than to allow the de facto officer to suffer during his commission. Annot., 64 A.L.R.2d at 1390; see Board of County Commissioners v. Litton, 315 P.2d 239 (Okla. 1957); Reed v. Sloan, 25 Pa.Commw. 570, 360 A.2d 767 (1976) aff'd., 475 Pa. 570, 381 A.2d 421 (1977); LaBelle v. Hazard, 91 R.I. 42, 160 A.2d 723 (1960); State ex rel. Barham v. Graham, 161 Tenn. 557, 30 S.W.2d 274 (1930); State ex rel. Godby v. Hager, 154 W. Va. 606, 177 S.E.2d 556 (1970). In appropriate cases, double payment of salary is desirable to preclude the public authorities from approving intrusion with impunity upon a public office. See, e.g., § 111.05, Fla. Stat. (1981). In addition, the rule offered by respondents may stimulate irresponsible persons to cling to office without a scintilla of title, in order to receive a salary in derogation of the de jure officeholder's legal rights.
Finally, we note that the probability of a lengthy election challenge may induce challengers to forego litigation because their victory may be monetarily hollow. Although compensation may not be a major incentive to public officers, it is a factor which may preclude rightful holders of office from seeking to remove unlawful holders of office.
In State ex rel. Dresskell v. City of Miami, 153 Fla. 90, 92, 13 So.2d 707, 708 (1943), we recognized
the familiar rule of law pertaining to public officers which recognizes that if one is lawfully entitled to a public office his right to salary attaches to the office and may be recovered in full, irrespective of any service rendered and without regard to the fact that he may have earned money elsewhere in private employment.
(Emphasis supplied.) Petitioner was ultimately adjudicated the lawful holder of the *822 office of county judge for Wakulla County. Applying Dresskell literally, petitioner is entitled to the salary requested. However, respondents point out that the above-quoted statement was merely dictum and was not applied to that case. Moreover, they argue that double payment of the same salary is not an action approved or favored by this Court. Ball v. State ex rel. Harvey, 108 Fla. 163, 146 So. 830 (1933). We disagree insofar as public officers are concerned.
We find that the reasons stated in the minority position indicate the appropriate rule and that de jure officers should receive the emoluments of their office. See Gavagan v. Marshall, 160 Fla. 154, 33 So.2d 862 (1948); State ex rel. Williams v. Lee, 121 Fla. 815, 164 So. 536 (1935); State ex rel. Hatton v. Joughin, 103 Fla. 877, 138 So. 392 (1931). Ball is not to the contrary. That case involved a situation where the officer had not judicially established his right to the office for which he sought a salary. Here, petitioner established her right to office prior to seeking back pay. She should receive the salary requested.
We recognize that in some cases, either through bad faith, waiver and estoppel, or malfeasance, a de jure officer may be precluded from seeking backpay. But in the instant case, petitioner did not acquiesce to the unlawful election results and accordingly is not subject to the above equitable principles. Public policy would not be served by denying compensation.
The final issue we address is whether there should be an offset to the de jure officer's salary against income earned from the private practice of law inasmuch as article V, section 13 of the Florida Constitution requires judges to "devote full time to their judicial duties." This is a question of first impression in our Court.
We have reviewed the authorities from other jurisdictions and find that public officers  as opposed to public employees  are entitled to back pay without setoff of earnings from other sources. See, e.g., City of Mobile v. Mitchell, 294 Ala. 474, 318 So.2d 708 (1975); 4 McQuillin, Municipal Corporations § 12.186 (3d ed. 1968); accord, Dreskell. This exception for public officers is nearly unanimous. Annot., 150 A.L.R. 100, 103 (1940). The reason advanced for the rule is that:
[N]o contractual relationship exists between the governmental unit and a public official, and that the compensation, being incidental to the office which the official holds, is governed by the right to the office, and cannot be diminished by the application of the doctrine of mitigation of damages which is based on the existence of a contractual relationship.
Vega v. Borough of Burgettstown, 394 Pa. 406, 408, 147 A.2d 620, 622 (1958). See also Gentry v. Harrison, 194 Ark. 916, 110 S.W.2d 497 (1937); Fitzsimmons v. Brooklyn, 102 N.Y. 536, 7 N.E. 787 (1886); and Reising v. Portland, 57 Or. 295, 111 P. 377 (1910).
Because we agree that a salary is merely incidental to the office, we agree with the cited cases that a public officer in these situations should not have his or her salary reduced because of the doctrine of mitigation of damages.
We therefore conclude that the response to the order to show cause does not present a defense to petitioner's request. Because we believe the appropriate officials will comply with this decision, we withhold issuance of the writ of mandamus at this time.
It is so ordered.
OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion.
BOYD, Chief Justice, concurring in part and dissenting in part.
When Judge Evelyn Flack became a candidate for the office of County Judge of Wakulla County she offered to serve for a term of four years for the salary fixed by law. Her election to the office created a contract of employment. Due to court decisions against her the office was unlawfully *823 filled by her opponent, Judge J. Michael Carter. He performed the judicial duties as a de facto public official and drew the salary. Neither of the judges acted in bad faith, nor did the voters, taxpayers, or other involved public officials. The controversy grew out of differing legal and judicial opinions relating to absentee ballots.
As stated in the majority opinion the various jurisdictions which have considered this issue have disagreed on whether an official who has won an elective office should be paid the full salary as an official when a de facto official has been improperly allowed to serve in the office and draw the salary.
In this case the contract of employment could not be performed because Judge Carter was officially declared the winner and was not finally ousted until about three and a half years later. Neither Judge Flack nor the taxpayers should suffer, nor should either be unjustly enriched due to circumstances which neither caused. It would be manifestly unfair for the taxpayers to be required to pay both Judge Carter and Judge Flack for the performance of duties of the office while only Judge Carter held the office under color of law. It would be equally unfair for Judge Flack not to be compensated by the government for the monetary damages she suffered from being denied the office which she had lawfully won.
Since governmental entities denied her the privilege of performing her contract for judicial services the matter should be treated as a breach of contract. She should receive the actual compensatory damages caused by the breach of contract.
The amount of damages awarded should be based upon the loss of professional income, if any, which Judge Flack incurred due to her not being able to serve in the office. Thus the salary she would have received had she served in the office should be given to her, reduced, however, by the amount she earned as a lawyer during the period when she was available to serve as county judge but was improperly excluded from doing so. If her earnings during that period exceeded the judicial salary, then, of course, she should recover no salary. She should also recover reimbursement for all court costs, reasonable attorneys' fees and other expenses incurred in her efforts to recover the office.
I therefore concur in the majority opinion ordering that Judge Flack be paid the back salary but dissent to that portion which denies the state the benefit of an offset of her earnings during the period when she was improperly denied the privilege of serving as County Judge.