Charles L. Robinson, C.P.A., C.F.E. Legislative Auditor 172 State Capitol Little Rock, AR 72201-1099
Dear Mr. Robinson:
I am writing in response to your request for my opinion regarding the following questions:
 1. If an individual is declared the winner of a mayoral election by the courts in March, and that individual did not serve as mayor in the months of January and February, may a city council approve, and may the individual receive, compensation and expense allowances for the January and February he did not occupy the office of mayor?
 2. If the individual is not entitled to compensation for the months of January and February, should these funds be repaid to the city?
As factual background, you report the following:
 Riley Porter was elected as Mayor of the City of West Helena in a contested election and served in the official capacity of Mayor for January and February of 1999. On March 2, 1999, the Phillips County Circuit Court declared Johnny Weaver the duly elected Mayor for the City of West Helena. In January of 2000, the West Helena City Council approved compensation and expense allowances for Mayor Johnny Weaver for January and February 1999, which resulted in two individuals being paid as Mayor during the same period of time.
In conjunction with your request, you have also provided me with a Final Judgment on Election Contest Claim, dated March 2, 1999, issued in Phillips County Circuit Court Case No. CIV 98-330, declaring Johnny Weaver the winner of the mayoral election conducted on November 24, 1998.
RESPONSE
I am unable to answer your first question, which raises an issue of first impression in Arkansas. Other jurisdictions are split on this question, with the majority holding that a municipality need not pay back salary and emoluments to a rightful officeholder (a "de jure" officer) when it has already paid an officer holding under color of right (a "de facto" officer). However, the Arkansas Supreme Court has characterized salary as an incident of office, suggesting that a de jure officer who prevails in an election contest is entitled to recover back salary from some source. The court has not expressly subscribed to this position, nor has it indicated whether, if back compensation is warranted, the source of payment should be the city or the de facto officer who held office under color of right. With respect to your second question, assuming, as your question implies, that the de jure mayor was not entitled to compensation during the period at issue, I believe he should clearly return the money. However, as reflected in my response to your first question, given the absence of controlling case law, I cannot render an opinion on his entitlement to back salary and emoluments. Judicial or legislative clarification appears warranted.
Question 1: If an individual is declared the winner of a mayoral electionby the courts in March, and that individual did not serve as mayor in themonths of January and February, may a city council approve, and may theindividual receive, compensation and expense allowances for the Januaryand February he did not occupy the office of mayor?
Notwithstanding your representation that "Riley Porter was elected as Mayor of the City of West Helena," it appears from the circuit court's final judgment that Johnny Weaver, not Riley Porter, was in fact elected mayor. However, apparently with public acquiescence and in good faith, Mr. Porter served and was compensated as mayor in January and February 1999. At issue, then, is whether Mr. Weaver is entitled to payment for service he did not render and, if so, whether that payment should come in the form of reimbursement from the city, which will then have paid a double salary for the period preceding the court's disposition of the election contest, or from Mr. Porter, who apparently rendered service as mayor under color of title during this time period.
Before addressing this question, I must distinguish between an individual who has "usurped" an office and one who in good faith but without legal justification serves in that office under some color of right, since the salary entitlements of the parties at issue may differ depending upon which scenario applies. In my opinion, Mr. Porter served as "de facto" mayor during the two months preceding the court's ruling on the election contest. See Mills v. Patton, 233 Ark. 755, 755, 759, 346 S.W.2d 689
(1961) (describing the possessor of a contested office as an "officer defacto"). In Gladson v. Wilson, 196 Ark. 996, 1002, 120 S.W.2d 732
(1938), the court echoed the following accepted definition of the term "de facto officer":
 In Faucett v. Gerlach, 132 Ark. 58, 200 S.W. 279, it was said: "An officer de facto is one who by some color of right is in possession of an office, and for the time being performs its duties with public acquiescence, though having no right in fact."
See Neal v. Parker, 200 Ark. 10, 18, 139 S.W.2d 41 (1940) (declaring that an ineligible usurper, lacking any color of title, does not even qualify as a de facto officer).[1]
As I noted in Ark. Op. Att'y Gen. No. 2001-015:
 The Arkansas Supreme Court and Arkansas Court of Appeals have held many times that the acts of de facto officers are valid and enforceable. See, e.g., Bell v. State, 334 Ark. 285, 973 S.W.2d 806 (1998) (assistant attorney general's participation in prosecution as de facto
prosecutor did not render conviction invalid); Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 444 (1996) (city attorney serving as de facto
prosecutor was valid prosecution); Dilday v. State, 300 Ark. 249, 778 S.W.2d 618 (1989)); Appleby v. Belden Corp., 22 Ark. App. 243, 738 S.W.2d 807 (1987) (Acts of de facto Workers' Compensation commissioners were valid); Casey v. Self, 236 Ark. 496, 367 S.W.2d 114 (1963) (order of de facto judge was enforceable); Brown v. Anderson, 210 Ark. 970, 198 S.W.2d 188 (1946) (affidavits given by affiants who were sworn in by de facto notary public were valid); Forrest City Gro. Co. v. Catlin, Executor, 193 Ark. 148, 97 S.W.2d 910 (1936) (mortgage acknowledged before de facto notary was valid).
However, even conceding that Mr. Porter's actions as mayor may have been valid under the doctrine just recited, it does not necessarily follow that he was entitled to retain money paid for his services. Indeed, within the specific context of your request, the question initially arises whether Mr. Weaver might have been both entitled and compelled to recover his back salary and emoluments, if at all, not from the city, but only from Mr. Porter pursuant to the "usurpation of office" statute, A.C.A. § 16-118-105, which provides in pertinent part:
* * *
 (b)(1) Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise.
* * *
 (3)(A) It shall be the duty of the prosecuting attorney to institute the actions mentioned in this section against all persons who usurp county offices or franchises where there is no other person entitled thereto or the person entitled fails to institute the action for three (3) months after the usurpation.
 (B) For usurpation of other than county offices or franchises, the action by the state shall be instituted and prosecuted by the Attorney General.
 (4)(A) Where a person is adjudged to have usurped an office or franchise, he shall be deprived thereof by the judgment of the court, and the person adjudged entitled thereto shall be reinstated in the office or franchise; but no one shall be adjudged entitled thereto unless the action is instituted by him.
* * *
 (5) Where the usurper has received fees and emoluments arising from the office or franchise, he shall be liable therefor to the person entitled thereto, who may claim the fees and emoluments in the action brought to deprive him of the office or franchise or in a separate action. If no one is entitled to the office or franchise, the fees and emoluments may be recovered by the state and paid into the public treasury.
In my opinion, this statute, which authorizes a rightful officeholder to seek recovery directly from a usurper who has mistakenly been paid salary and emoluments, does not apply in a case where the only dispute is the result of an election between qualified candidates, as opposed to a case where a contestant is disputing a successful candidate's eligibility to run for the office in the first place. As the court noted in Ferguson v.Wolchansky, 133 Ark. 516, 202 S.W. 826, 827 (1918):
 Persons assuming to act under an election authorized by law have color of title to an office and are not usurpers within the meaning of the statute. . . . At any rate, it devolved on appellants in order to state a cause of action to allege that appellees were not acting under an election to office and were usurpers.
In Jessup v. Hancock, 238 Ark. 866, 867-68, 385 S.W.2d 24 (1964), which involved the question of whether a director of a school district was ineligible to serve because he owned no property in the district when elected, the court distinguished as follows between an election contest and a usurpation action:
 Appellant contends that the trial court had no jurisdiction to hear this matter and should have dismissed the complaint, asserting that appellee's suit was in fact an election contest. Our decision in Faulkner v. Woodard, 203 Ark. 254, 156 S.W.2d 243 [1941], is clearly controlling. Quoting from Wood v. Miller, 154 Ark. 318, 242 S.W. 573, we said in the Faulkner case that:" This is not, in fact, a contest of an election, for, as was said in Wheat v. Smith, 50 Ark. 266, 7 S.W. 161, there is nothing to contest concerning the result of the election. Appellee was elected, as conceded, but appellant is contesting his eligibility to hold the office . . ."
In accordance with this distinction, the court in Faulkner held that an action contesting a successful candidate's eligibility must be brought as a usurpation action, not as an election contest. 203 Ark. at 257.
In the present case, it appears that Mr. Weaver, as the de jure mayor, properly instituted an action to have himself declared the rightful officeholder. However, as reflected in the Final Judgment on Election Contest Claim attached to your request, it appears Mr. Weaver filed this action as a garden-variety election contest pursuant to A.C.A. §7-5-801(a), which authorizes "any candidate to contest the certification of nomination or the certificate of vote as made by appropriate officials in any election," not as a usurpation action pursuant to A.C.A. §16-118-105.[2] In my opinion, then, Mr. Weaver would not be entitled to seek a direct recovery of fees and emoluments from Mr. Porter pursuant to A.C.A. § 16-118-105(b)(5).
As previously noted, the jurisdictions are split on the question of whether a successful election contestant can recover from the city salary that it has already paid to the unsuccessful election contest defendant. The general outlines of that split are summarized as follows in Annot.,Payment of Salary to De Facto Officer or Employee as Defense to Action orProceeding by De Jure Officer or Employee for Salary, 64 A.L.R.2d 1375 (1959):
 The subject under annotation, not without its own particular difficulties, involves a question of law on which there is a distinct split of authority, a majority of the courts holding that payment to the de facto officer or employee by the governmental body is a good defense to a suit brought by the de jure officer or employee who seeks to recover his back salary for the period when he was not performing the duties of his office or position. A minority of the courts hold that this defense will not preclude recovery by the de jure officer or employee.
 Where this rule has been adopted, the de jure officer must generally look to the de facto officer for the sums paid to the latter. See 43 Am Jur 167, Public Officers § 386, and 93 ALR 273, supplemented in 151 ALR 966.
 The reasons offered in support of the majority rule are that where the governmental body has received only one service, it ought not to be made to pay twice for it; that efficiency in government requires that officers or employees be promptly paid for their services, and that disbursing officers ought to be entitled to rely upon the de facto
officer's or employee's apparent title in making payment to him; that since the de jure officer or employee has no property or contract right in his office or position, it is only fair that he perform his duties before he is entitled to recover any salary for them; and finally, that broad grounds of public policy preclude the payment of back salary to the de jure officer or employee. Perhaps a further reason in support of the majority view is the court's realization that successful governmental operation may be seriously impaired by repeated and large-scale withdrawal of governmental funds for which no provision has been made by the public body in question.
 The reasons advanced in support of the minority view are that the salary involved follows the legal title to the office; that the majority rule is unique, that is, no similar rule exists in connection with any other claim against a state or municipality; that the public good is not served when a public officer, legally entitled to salary, does not receive it; and that the public authorities ought not to be told that they may countenance the intrusion of public office with impunity. It has also been said that it is more just that the public treasury be made to respond to the de jure officer rather than that the de facto officer be made to suffer, where the fault for the de jure
officer's absence from office lies with public agents and not with the de facto officer. Again, as to an employee protected by civil service, it has been said that his tenure becomes meaningless if, after being wrongfully deprived of his position, he must then lose the salary for this period.
(Footnotes omitted.) See also Flack v. Graham, 453 So. 2d 819, 821 (Fla. 1984) (reviewing the majority and minority rules and subscribing to the latter, "which is gaining in acceptance"); State ex rel. Godby v. Hager,177 S.E.2d 556, 558-59 (W.Va. 1970) (same).
The Arkansas Supreme Court has never directly addressed whether the victor in an election contest is entitled to recover salary and emoluments dating back to the beginning of his term and, if so, from whom. However, the court has verged on declaring outright that a de jure
officer is entitled to compensation from the government body he serves, whether directly or by way of recovery through a de facto recipient. InGentry v. Harrison, 194 Ark. 916, 110 S.W.2d 497 (1937), the court offered the following in ruling that the Insurance Commissioner and State Fire Marshal was entitled without any calculation of offset to recover his unauthorized replacement's salary until the act abolishing his position took effect 90 days after adjournment of the legislature:
 In ordinary cases, where a party is employed under a contract and is discharged and sues for damages, the employer is entitled to show what the discharged employee earned during the time, from the discharge to the expiration of the contract. This is true because the suit is for damages, and if the employee has had other employment, or could have had other employment and earned money, his damages, of course, would be reduced by the amount he had earned or could have earned. But appellant did not hold this office by contract, and he was not entitled to the salary by contract; he was entitled to it by law.
* * *
 There is some conflict in the authorities where there is no [usurpation] statute. The New York court held that the rule, in cases where there was a suit for damages for a breach of contract, had no application in the suit of an officer who had been wrongfully deprived of his office, and said:
 "But this rule of damages has no application to the case of an officer suing for his salary, and for the obvious reason that there is no broken contract or damages for its breach where there is no contract. We have often held that there is no contract between the officer and the state or municipality by force of which the salary is payable. That belongs to him as an incident of his office, and so long as he holds it; and when improperly withheld he may sue for it and recover it. When he does so he is entitled to its amount, not by force of any contract, but because the law attached it to the office; and there is no question of breach of contract or resultant damages out of which the doctrine invoked has grown."
Fitzsimmons v. City of Brooklyn, 102 N.Y. 536, 7 N.E. 787, 55 Amer. Rep. 835.
 The rule applicable to damage cases has no application to the case of an officer suing for his salary for the reason that, in the latter case, liability is not upon contract. The salary is an incident of the office and, if he is wrongfully excluded from the office, he may recover the salary without crediting his earnings thereon. Reising v. City of Portland, 57 Ore. 295, 111 Pac. 377, Ann. Cas. 1912D, 895.
(Emphasis added.)
Gentry was a usurpation action because the ousted plaintiff was indisputably a de jure officer at the time of his appointment, thus making the individual appointed to replace him a usurper liable to repay him under the usurpation statute. See discussion supra. In its specific holding, then, Gentry appears to establish that when a de jure officer is ousted from his position, his successor, whether or not subjectively innocent in assuming the position, will be liable under the usurpation statute to repay to the rightful officeholder any salary and emoluments received. With respect to your question, Gentry appears relevant in supporting the general proposition that a rightful officeholder is entitled to payment as a matter of right incident to the office itself — a principle that would appear to apply not only to an incumbent wrongly ousted from office but also to a successful election-contest plaintiff who was deprived of his office before he assumed it. See also Fort Smithv. Quinn, 174 Ark. 863, 865-66, 296 S.W. 722 (1927) ("`[T]he duties of the chief and fire force or a member of the department are so far official in their character that the one holding either position is entitled to draw his salary as an incident to such position, whether he performs the duties of such position or not,'" quoting Leonard v. City ofTerre Haute, 93 N.E. 872, 875 (Ind.App. 1911)).
However, the question remains whether a candidate who, due to election error, in good faith assumes office in the first instance in lieu of the rightful officeholder might be entitled to keep compensation earned prior to his removal in the wake of an election contest. With respect to your specific request, the answer to this question may bear on whether Mr. Weaver's claim, if any, would lie exclusively against the city. In this regard, I am struck by the fact that the only statutorily authorized claim by a de jure officer against his de facto predecessor is the one set forth at A.C.A. § 16-118-105, which I opined above applies only against usurpers, as distinct from bona fide election contestants. As the court stated in Gazaway v. Greene County Equalization Board,314 Ark. 569, 575, 864 S.W.2d 233 (1993): "The phrase expressio unius estexclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co.,296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390,663 S.W.2d 930 (1946)." Applying this principle, it may well be that Mr. Weaver would have been precluded from seeking to recover his back salary and emoluments directly from Mr. Porter.
To further complicate matters, the supreme court has not always been clear on the general question of whether an officer illegally, albeit in good faith, performing services on behalf of a city or county might be entitled to retain the quantum meruit value of his or her services when the city or county would otherwise be unjustly enriched. This question has usually arisen in the context of dual officeholding or dual employment where holding the second position was for some reason prohibited by virtue of holding the first. As discussed below, determining whether a lone claimant for innocently performed but unauthorized work might rightly be paid is difficult enough without having to consider the competing claim of an individual who was deprived of the chance to perform the work himself under the authority of his rightful office.
In Thompson v. Roberts, 333 Ark. 544, 550-51, 970 S.W.2d 239 (1999), the court held that a mayor who had served and been paid as the city's bookkeeper could keep past salary for this job, notwithstanding the fact that A.C.A. § 14-42-107 (Repl. 1998) expressly forbade such dual employment. The court analyzed this issue as follows:
 In Revis v. Harris, 219 Ark. 586, 243 S.W.2d 747 (1951) ("Revis II"), this court recognized that the payee of one holding incompatible positions may retain the quantum meruit value received for services rendered. There the court engaged in an analysis of the statutory precursor of section 14-42-107, Ark. Stat. Ann. § 19-909, and held that the mayor illegally received salary as municipal judge and as a laborer for the water and light department. However, the trial court found that "[t]o require the defendant to repay the City of Clarksville and Johnson County money received for services rendered while acting in good faith would be unjust and inequitable." Id. On appeal, this court held that the mayor was not entitled to retain the salary paid to him as municipal judge, given the existence of "a statute denying him the right he claimed." However, with respect to the salary received as a laborer, the Revis court recognized that those monies were not paid "for services as an officer." While the payments were illegal, the legislature did not declare them to be null and void. Thus, the mayor was entitled to keep the quantum meruit value of the services rendered as a laborer. "There is no claim made that he received more than fair value for services as day laborer, or that the amount paid him for laying the pipe line was more than the value on the quantum meruit
basis." Revis II, supra.
 In the present case, the trial court never reached the issue of this affirmative defense, given that it erroneously found that the underlying plaintiffs failed to meet their burden of proof. Therefore, on remand the trial court should determine whether the amount paid to Roberts exceeded the quantum meruit value of the services that she provided. See Revis II, supra.
333 Ark. at 551.
The court's analysis in this passage might be read as suggesting the following: (1) an officer who impermissibly holds another civil office will be prohibited from recovering salary and emoluments for the second office — a conclusion that would appear to apply equally to a single impermissibly held civil office, particularly when a de jure contender has a valid claim to the office; and (2) an officer who has impermissibly contracted with the city or county to provide goods and services may nevertheless recover the value of those services if he has acted in good faith and if justice so dictates.
However, the apparent clarity of these formulations is hard to reconcile with the court's somewhat perplexing analysis of this same issue shortly before in Looper. Discussing its dispositions in the two Revis
decisions, the court remarked:
 We did, however, require repayment of the money received for service as municipal judge and wrote in Revis II that the Sitton decision required return of the funds received illegally by Mr. Harris "as an officer." Again, it was illegal for Mr. Harris to enter upon the office of municipal judge while he was mayor. Revis II was not a case in which the officer was qualified upon entry but lost his qualification later.
 In Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963), we rejected the plaintiff's claim that dual office-holders were required to repay the salary they had received through the improper "second" office. We noted that there was" nothing in the record to justify a finding that appellants have acted with any fraudulent intent, or that they have even appreciated the possibility of their holding illegal offices. Under the circumstances, those appellants should not be required to account for funds received for services rendered and expenses incurred as Members of the involved State Boards." Id. at 331, 372 S.W.2d at 588.
 We expressed a similar view in Martindale v. Honey, 261 Ark. 708, 551 S.W.2d 202 (1977). There, a legislator held the office of deputy prosecuting attorney in violation of a constitutional provision that prohibits a member of the General Assembly from holding another state office. The legislator argued that "he had in good faith performed the duties" of deputy prosecutor and won summary judgment. Id. at 709, 551 S.W.2d at 203. We affirmed, quoting the Starnes opinion, and said that the State could not receive a "windfall" in light of the deputy prosecutor's "good faith performance." Id. at 710, 551 S.W.2d at 203. But see Mackey v. McDonald, 255 Ark. 978, 984, 504 S.W.2d 726, 732
(1974) (stating" fraud or bad faith" need not be shown in illegal-exaction cases; "A good faith misapplication of funds in a manner or for a purpose not authorized by law constitutes an exaction from the taxpayers which is illegal even though not fraudulent.").
 While our cases thus suggest that one who enters upon an office" illegally" may be liable to an illegal-exaction claim, we have no case dealing with an illegal-exaction claim against an officer who, although qualified at the time of appointment, as in this case, continues to serve after losing his qualification.
334 Ark. at 219-20.
This passage is disconcerting insofar as the court, in the very course of acknowledging precedents in which it had held that a dual officeholder could retain both salaries even in the face of constitutional or statutory proscriptions against doing so, appears to want to draw the following inconsistent bright-line distinction: a dual officeholder who undertakes the second office illegally is barred from retaining the second salary, whereas if the dual officeholding is permissible when undertaken and only later becomes illegal, the officeholder may retain the entirety of both salaries so long as his service was in good faith and the government would be unjustly enriched if it recovered the money.
The court revisited these issues in Biedenharn v. Hogue, 338 Ark. 660,1 S.W.3d 424 (1999), which addressed whether the Speaker of the Arkansas House of Representatives might retain salary he was paid while simultaneously serving as Arkansas State University's Assistant Athletic Director for Development. The court offered the following analysis in considering whether the legislator was obliged to return the ASU salary:
 Our case law has established the rule that, even if an officer holds a job and provides services illegally, he may retain the quantum meruit
value of the services he provided. Harris v. Revis, 219 Ark. 586, 243 S.W.2d 747 (1951). In the Revis case, Harris was the mayor of Clarksville and also worked as a laborer for the Clarksville water and light departments, drawing a salary for both positions. In an illegal exaction suit brought by several concerned taxpayers, the Revis court held that Harris was entitled to retain the quantum meruit value received for his services even though he was holding the water and light department job in violation of a state statute. The court further ruled in Revis that the critical factor was the fact that the General Assembly had not declared any such contracts (i.e., between a municipal officer and a provider of services to the municipality) to be "null and void." Quoting from Gantt v. Ark. Power Light Company, 189 Ark. 449, 74 S.W.2d 232 (1939), the court said:
 In the absence of the prohibitory words "null and void" and where the contract has been performed by the parties in good faith, compensation may be retained measured by the reasonable value thereof. Such recovery, however, is not because of the contract, but is grounded squarely upon the proposition that valuable services having been rendered which have been accepted by the parties, it would be inequitable and unjust to permit one party to substantially gain under the contract to the great and irreparable damage of the other.
 219 Ark. at 590-591, 243 S.W.2d at 750.
 Consistent with the holdings in Revis and Gantt, this court also later decided the case of Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585
(1963). There, even though members of the General Assembly illegally held office as members of state boards, this court held that, in the absence of a showing of fraudulent intent by the members, the members were not required to account for the services and expenses they had incurred.
338 Ark. at 664-65. Cf. Dermott Special School District v. Brown,253 Ark. 22, 222, 485 S.W.2d 204 (1972) ("[W]hile the courts should be zealous to protect, as far as possible, the taxpayers from loss occasioned by the improper diversion of public funds from one account to another by county officials, justice and equity do not require that the public should actually profit by any such wrongful acts.")
In my opinion, it is very difficult to glean any clear principles from the foregoing. Given the supreme court's apparently conflicting rulings on the issue, I harbor some doubt whether even dual officeholders, as distinct from officers who merely contract to supply goods or services to the political entities they represent, are invariably barred by a per se rule from recovering or retaining their dual salaries under a quantummeruit theory. One suspects that the court, at least in part, has been motivated in its pronouncements by an ad hoc sense of fairness — a conclusion that makes it all the more difficult to predict how it would resolve the even more ambiguous situation where a de jure officer has a clear legal claim to full salary and emoluments by virtue of his election, whereas a de facto officer has an arguable moral claim to recover for services he has rendered in good faith and with governmental acquiescence. It may be that under such circumstances the court would conclude that public policy dictates paying both contestants. I can only suggest that legislative or judicial clarification on this point would be welcome.
Question 2: If the individual is not entitled to compensation for themonths of January and February, should these funds be repaid to thecity?
As posed, I believe the answer to this question is "yes." However, as noted in my response to your previous question, given the absence of binding precedent, I am unable to opine whether Mr. Weaver was entitled to compensation as mayor during this time period.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Although the ensuing discussion will follow the recited definition of a de facto officer, I should note that the term is occasionally used to denote an ineligible usurper lacking any color of right. See, e.g.,Looper v. Thrash, 334 Ark. 212, 217-18, 972 S.W.2d 250 (1998) (approvingly invoking Sitton v. Burnett, 216 Ark. 574, 226 S.W.2d 544
(1950), which characterized an ineligible marshal as a de facto officer not entitled to a salary). In Ark. Op. Att'y Gen. No. 96-054, my immediate predecessor summarized the authority for this usage as follows:
 The Arkansas Supreme Court has held that de facto officers constitute usurpers within the meaning of the usurpation statute. In Sitton v. Burnett, 216 Ark. 574, 226 S.W.2d 544 (1950), the court stated:
 This court in Stephens v. Campbell, 67 Ark. 484, 55 S.W. 856, in construing the effect of the above statute, [the usurpation statute] announced the controlling rule as follows: "Under the statutes of this State, an officer de facto, without legal title to the office, is a usurper (Lambert v. Gallagher, 28 Ark. 451; Wheat v. Smith, 50 Ark. 266-273, 7 S.W. 161), and can be removed from office by `an action by proceedings at law instituted against him, either by the State or the party entitled to the office.' . . ."
 Sitton, 216 Ark. at 577. Accord, May v. Edwards, 258 Ark. 871, 529 S.W.2d 647 (1975).
As should become apparent in the course of my discussion, I believe an unsuccessful defendant in an election contest clearly served as a defacto officer without being a usurper subject to the conditions of A.C.A. § 16-118-105.
[2] Surprisingly, none of the statutes dealing with election contests, A.C.A. § 7-5-801 et seq., addresses the disposition of compensation wrongly denied the election contest winner.