Sue THOMPSON *v.* Florence E. ROBERTS

97-1150                                                970 S.W.2d 239

Supreme Court of Arkansas
Opinion delivered June 11, 1998

*Thurman, Lawrence & Heuer, P.L.C.*, by: *Sam Heuer*, for appellant.

*David C. Schoen* and *Thomas N. Kieklak*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This is an illegal-exaction case where appellants, various residents and taxpayers of Devalls Bluff, sought recovery of a portion of the salary paid to appellee while she acted as both the mayor and bookkeeper of Devalls Bluff. The trial court found that appellants failed to meet their burden of proof. We conclude that this ruling was erroneous, and we reverse and remand for further proceedings consistent with this opinion.

On November 22, 1995, appellants, various citizens and taxpayers of Devalls Bluff, filed a complaint in Prairie County Circuit Court against the appellee, Florence Roberts. They alleged that Roberts, while serving in her capacity as Mayor of Devalls Bluff, unlawfully exacted tax monies belonging to the city while serving in a part-time job as bookkeeper for the city. Appellants attached a report from the Legislative Joint Auditing Committee which

showed that Roberts obtained $22,850 in total bookkeeper's salary during these years. The report noted that Roberts's salary payments as both mayor and bookkeeper were in conflict with Attorney General Opinion No. 93-177. Appellants sought a judgment in that amount against Roberts.

On March 20, 1997, the trial court held a hearing in the matter. Florence Roberts testified that she served as mayor from February 1991 through February 1994. During that time, she received a $150 monthly salary for that position. She also served as bookkeeper, which "involved" bookkeeping for the water and sewer company, the "street," and "general fund." She was compensated separately as a bookkeeper while serving as mayor. She had served as bookkeeper as early as 1986, while her husband was mayor, including at the time of his death in January 1991. According to Roberts, the position was approved by the city council, and the council had discussed the issue of dual capacity before August 1993.

Roberts claimed she did not know that she could not serve in both capacities until the legislative audit. After August 1993, Roberts waived compensation as a bookkeeper and received only the $150 monthly salary for the mayor's position. She still performed bookkeeping services from August 1993 to mid-1994, while she trained her replacement.

Al Simmons was a council member at the time when Roberts was appointed mayor, and continued until the time she was defeated. He became aware that Roberts was drawing a dual salary when a citizen brought it to the attention of the council. Simmons testified that the council had several discussions concerning the matter: "We were trying to get someone to take an interest in it, someone to advise or someone to take official action and do something about it if it were illegal, that's something we could not do. We made several attempts to do that with several officials, and also it was known to Mrs. Roberts, and we could get nothing done about it." Up until the time that Roberts discontinued drawing two salaries, she never expressed a willingness to forego pay as a bookkeeper in a city council meeting. When asked "Was Mrs. Roberts's pay or salary or position ever approved by the city

council as bookkeeper," he responded that "I personally do not know if it ever was. It certainly wasn't in my presence."

Roberts called one witness, June Gresham. She had been a councilman since 1993. At that time she was aware that Roberts was drawing salary as the mayor and as a bookkeeper. When asked whether she approved expenditures for the salary or wages for bookkeeper, she answered "It may not have been listed each month, but we knew what, or at least I did, I can't speak for anyone else, but I did know that that's one of the checks that she received was for bookkeeper." She became aware that the dual capacity may have been improper "from discussion," although "[t]hat was never brought to the floor." When she found out, she went to the Municipal League and talked to Bill Fleming, "and he said if you approve these bills and that is part of the bills, then it's in a second class city, there was no problem."

Following the close of all evidence, the trial court took the matter under advisement. On April 3, 1997, the trial court entered "Findings of Fact and Conclusion[s] of Law." The trial court found that Roberts was both mayor and bookkeeper, and was paid for both positions, from February 1991 to August 1993. After this time she waived her salary as bookkeeper. It found that the council knew or should have known that Roberts was serving in both positions and was paid for both jobs. "No wrongdoing other than performing two jobs has been alleged or proven. No complaint was made about the job the Defendant was doing in either position. The only adverse statement was that the two jobs should have been about the same and there should have only been one salary." Once Roberts was apprised by the State Auditor that holding both positions appeared to be a conflict of interest, she gave up her salary as bookkeeper, and hired a replacement in July 1994. Roberts worked as bookkeeper but went unpaid from August 1993 to July 1994. "Plaintiffs seek to require Defendant to refund the money Defendant received as bookkeeper only because the Auditor's letter said there appeared to be a conflict. Plaintiffs failed to carry their burden of proof. The Complaint should be dismissed."

For reversal, appellants advance two separate theories why Roberts was prohibited from holding both positions. The first is based on Ark. Code Ann. § 14-42-107 (Repl. 1998), governing the interest of city council members in offices or contracts. The other is based on the common-law doctrine of incompatibility, as developed in our cases.

■ We address the common-law theory first. In *Rogers v. Sangster*, 180 Ark. 907, 23 S.W.2d 613 (1930), and later in *Davis v. Doyle*, 230 Ark. 421, 323 S.W.2d 202 (1959), this court described the common-law rule of incompatibility as follows:

> At common law, and generally under statutory enactment, it is now established beyond question that a contract made by an officer of a municipality with himself, or in which he is interested, is contrary to public policy, and tainted with illegality; and this rule applies whether such officer acts alone on behalf of the municipality, or as a member of a board or council. Neither the fact that a majority of the votes of a council, or board, in favor of the contract are cast by disinterested officers, nor the fact that the officer interested did not participate in the proceedings, necessarily relieves the contract from its vice. The facts [sic] that the interest of the offending officer in the invalid contract is indirect, and is very small, is immaterial. The statutory prohibition is frequently so wide in its terms as to prohibit any officer from contracting with the municipality, whether he takes part in the making of the contract or not.

In *Rogers, supra,* we reasoned that "[m]unicipal officers are held by the courts to a strict accountability in their dealings with or on behalf of the municipal corporation; and in recognition of their incapacity to serve two masters, as an incident to the frailty of human nature, public policy has placed a disability to make a contract for the city where they are interested in it in any degree. The rule is so inflexible that no inquiry into their good or bad intention or to the fairness or unfairness of the contract is permitted." The *Rogers* court thus struck down an ordinance which authorized the mayor and a majority of the board of alderman to "take over" the waterworks and electric light plant. Similarly, in *Davis, supra,* this court held that the mayor of Hoxie could not also serve as the manager of the sewer and waterworks system. This "double

role" was "inconsistent and incompatible." *Davis, supra.*[1] In *Tappan v. Helena Federal Savings & Loan Ass'n,* 193 Ark. 1023, 104 S.W.2d 458 (1937), we explained the rule that "[t]he inconsistency, which at common law makes offices incompatible . . . lies rather in the conflict of interest, as where one is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other." *Byrd v. State,* 240 Ark. 743, 402 S.W.2d 121 (1966), expounded on *Tappan,* stating that "incompatibility exists where there is a conflict of interests, which includes, *inter alia,* where one office is subordinate to the other."

■ Based on the foregoing principles, we hold that the trial court erred in finding that appellants failed to carry their burden of proof. While the trial court found that appellants had proved no wrongdoing except "performing two jobs," it is that very inconsistency which is the basis of the incompatibility doctrine. One commentator has explained, "Incompatibility arises, therefore, from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where the antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both." Eugene McQuillin, 3 *The Law of Municipal Corporations* § 12.67 (3d ed. 1990). In the present case, common sense dictates that the bookkeeper for the city would to some degree be subject to the supervisory power of the mayor. *See Tappan, supra.* This is true despite express statutory authority providing for the supervisory power of mayors in cities of the first class, *see* Ark. Code Ann. § 14-43-504 (Repl. 1998), and the lack of such an express statement of power for mayors in cities of the second class such as Devalls Bluff.

Our conclusion is bolstered by reference to Ark. Code Ann. § 14-42-107. The statute provides in full:

---

[1] The court in *Rogers* and *Davis* also relied on the statutory predecessor to section 14-42-107 in reaching its holdings.

(a)(1) No alderman or member of any council of a municipal corporation shall, during the term for which he shall have been elected or one (1) year thereafter, be appointed to any municipal office which was created or the emoluments of which shall have been increased during the time for which he shall have been elected.

(2) No alderman or council member shall be appointed to any municipal office, except in cases provided for in this subtitle, during the time for which he may have been elected.

(b)(1) No alderman or council member shall be interested, directly or indirectly, in the profits of any contract for the furnishing of supplies, equipment, or services to the municipality unless the governing body of the city shall have enacted an ordinance specifically permitting aldermen or council members to conduct business with the city and prescribing the extent of this authority.

(2) The prohibition prescribed in this subsection shall not apply to contracts for the furnishing of supplies, equipment, or services to be performed for a municipality by a corporation in which no alderman or council member holds any executive or managerial office, or by a corporation in which a controlling interest is held by stockholders who are not aldermen or council members.

Ark. Code Ann. § 14-42-107 (Repl. 1998). While the statute by its express terms applies only to council members or aldermen, we have previously held that this statute is equally applicable to mayors. *See Davis v. Doyle*, 230 Ark. 421, 323 S.W.2d 202 (1959). Under the plain language of the statute, it is apparent that Roberts's position as bookkeeper may be seen as an interest in the profits of a contract for the furnishing of services. Such an interest is prohibited by section 14-42-107(b)(1) absent an authorizing ordinance.

We also reject Roberts's suggestion that the current statute's omission of a reference to "jobs" is an abrogation of the common law here. *See* Ark. Stat. Ann. § 19-909 ("nor shall any Alderman or member be interested, directly or indirectly, in the profits of any contract *or job*, the work or services to be performed for the corporation . . . .") (emphasis added), *amended by* Act 485 of 1981. Again, we simply note that under the plain language of the statute,

a position as a city's bookkeeper may be seen as a contract for services.

This still leaves the issue of Roberts's *quantum meruit* defense, which she pleaded below. In *Revis v. Harris*, 219 Ark. 586, 243 S.W.2d 747 (1951) ("*Revis II*"), this court recognized that the payee of one holding incompatible positions may retain the *quantum meruit* value received for services rendered. There the court engaged in an analysis of the statutory precursor of section 14-42-107, Ark. Stat. Ann. § 19-909, and held that the mayor illegally received salary as municipal judge and as a laborer for the water and light department. However, the trial court found that "[t]o require the defendant to repay the City of Clarksville and Johnson County money received for services rendered while acting in good faith would be unjust and inequitable." *Id.* On appeal, this court held that the mayor was not entitled to retain the salary paid to him as municipal judge, given the existence of "a statute denying him the right he claimed." However, with respect to the salary received as a laborer, the *Revis* court recognized that those monies were not paid "for services as an officer." While the payments were illegal, the legislature did not declare them to be null and void. Thus, the mayor was entitled to keep the *quantum meruit* value of the services rendered as a laborer. "There is no claim made that he received more than fair value for services as day laborer, or that the amount paid him for laying the pipe line was more than the value on the *quantum meruit* basis." *Revis II, supra.*

In the present case, the trial court never reached the issue of this affirmative defense, given that it erroneously found that the underlying plaintiffs failed to meet their burden of proof. Therefore, on remand the trial court should determine whether the amount paid to Roberts exceeded the *quantum meruit* value of the services that she provided. *See Revis II, supra.*

Reversed and remanded.