The Honorable Preston Scroggin State Representative 59 Marshall Road South Vilonia, AR 72137-9335
Dear Representative Scroggin:
I am writing in response to your request for my opinion on the following questions:
 1. In light of the provisions of A.C.A. §§ 14-235-206(a)(2) and -206(a)(3)(A), can a city council dissolve a sewer committee when there are continuous vacancies and no regular meeting?
 2. In light of these same provisions, can a city council serve as a sewer committee with an appointed superintendent?
RESPONSE
With respect to your first question, I believe a city council may dissolve a sewer committee established pursuant to subchapter 2 of chapter 235 of title 14 of the Code only if it does so in conjunction with establishing a sanitary board pursuant to A.C.A. §§ 14-235-208 and -209. With respect to your second question, I believe city council members would be prohibited from serving on a sewer committee pursuant to the common-law doctrine of incompatibility.
Question 1: In light of the provisions of A.C.A. §§ 14-235-206(a)(2) and-206(a)(3)(A), can a city council dissolve a sewer committee when thereare continuous vacancies and no regular meeting?
In my opinion, a city council in all likelihood may dissolve a sewer committee, but only if it provides by ordinance that the supervision and control of the sewage system works will henceforth be undertaken by a sanitary board pursuant to A.C.A. § 14-235-208.
Section 14-235-203 of the Code (Repl. 1998) generally authorizes municipalities to construct and to operate municipally owned sewage systems. Subsection 14-235-205(a)(2) authorizes the issuance of revenue bonds to pay the costs of the works and property comprising the sewage system. Section 14-235-206 provides:
 (a)(1)(A) The construction, acquisition, improvement, equipment, custody, operation, and maintenance of any works for the collection, treatment, or disposal of sewage and the collection of revenue from it for the service rendered by it, shall be effected and supervised by a committee to be designated for that purpose by the municipal council.
 (B) The committee will function under the control of the council to such extent as may be provided in the ordinance or resolution appointing the committee.
 (2) The council may remove any member of the committee, with or without cause, and may appoint any substitute members in case of death, removal, or resignation.
(3)(A) The committee will be called the "sewer committee."
 (B) Provided, however, any city may by ordinance change the name of its sewer committee to "wastewater treatment committee," and, in such instance, the wastewater treatment committee shall have all powers, duties, and functions prescribed by this chapter for wastewater treatment committees.
 (b) The council may appoint one (1) sewer committee to handle all municipal sewer projects, or it may entrust each project to a separate committee.
Alternatively, A.C.A. § 14-235-238 provides for the formation of a sanitary board consisting of the mayor and two appointees who have not been officers or employees of the municipality for at least one year preceding their appointment. Subsection (a)(1) of this statute provides:
 The municipal council may, in its discretion, provide by ordinance that the custody, administration, operation, and maintenance of sewage system works shall be under the supervision and control of a sanitary board created as provided in this section.
A sanitary board may exercise the same powers and duties as a sewer committee or wastewater treatment committee. A.C.A. § 14-235-209. Nothing in the Code suggests that any other entity may be charged with supervision of the operations of a sewage system developed under this subchapter.
The Arkansas Supreme Court has concluded that a city council, having adopted an ordinance creating a water and sewer commission, could abolish the commission by a majority vote. City of Ward v. Ward Water SewerSystem, 280 Ark. 177, 655 S.W.2d 454 (1983); see also Ark. Op. Att'y Gen. No. 92-323 (city council may abolish civil service commission), Ark. Op. Att'y Gen. No. 94-029 (quorum court may "deactivate" rural development authority by repeal of the initial county court resolution activating it); Wright v. City of Florence, 93 S.E.2d 215 (S.C. 1956) (city council may repeal ordinance creating civil service commission where legislature simply granted city permission to establish by ordinance a commission; the legislature did not establish or create the commission, the city council created it by ordinance). The trial court inWard held that the commission had continuing authority and could not be abolished. In reversing this holding the Arkansas Supreme Court acknowledged that the commission had been granted absolute authority for the management and operation of the water and sewer system.280 Ark. at 178; see generally A.C.A. §§ 14-234-306—307 (Repl. 1998). However, the court based its reversal on the settled rule of law that whatever a municipal government may do by a majority vote, it may undo by majority vote, absent constitutional or statutory restrictions.280 Ark. at 179. The court stated that "in the absence of any provision, either express or rationally implied, that a water and sewer commission once created could never be abolished by the governing body that created it," the court was bound to recognize the general rule. Id.
I question whether the court's analysis in Ward can or should be extended to support simply dissolving the sewer committee in this case and transferring control of the sewer works to the city council. The sewer commission at issue in Ward was formed under what is now subchapter 3 of chapter 234 of title 14 of the Code, whereas your question is concerned with a sewer committee formed under subchapter 2 of chapter 235 of title 14. Subchapter 2 of the current Code differs in significant respects from the legislation that prompted the court's ruling in Ward. In my opinion, the current Code contains what the court in Ward termed a "rationally implied" provision precluding the city council from directly controlling the operations of the sewer system.
With respect to the statutory scheme upon which the court based it ruling in Ward, Ark. Stat. Ann. § 19-4202.1 (Repl. 1980) defined the term "operating authority" to mean "either the City Council, Legislative Body or Board of Commissioners, whichever, in a given instance, shall be charged with the responsibility of operating the municipal waterworks system." Section 19-4219 of Arkansas Statutes Annotated further provided that a city of the first or second class "may, by appropriate action of its City Council, create a commission for the purpose of operating and managing said waterworks and distributing system." (Emphasis added.) The legislature thus decreed that a city council could either itself manage a water and sewer system or designate a commission to do so. In my opinion, Ward stands for no more than the proposition that under these circumstances a city council retains the discretion to reclaim its statutorily authorized managerial power by abolishing a commission to which it had delegated that power.
A similar analysis does not apply to subchapter 2 of chapter 235 of title 14. Section 14-235-206 of the Code is unequivocal in declaring that both the construction and the operation of a sewer system "shall be effected and supervised by a committee to be designated for that purpose by the municipal council," A.C.A. § 14-235-206(a)(1)(A) (emphasis added), subject only to the somewhat nebulous condition that "[t]he committee will function under the control of the council to such extent as may be provided in the ordinance or resolution appointing the committee," A.C.A. § 14-235-206(a)(1)(B). With respect to "the custody, administration, operation, and maintenance of sewage system works" already in existence, A.C.A. §§ 14-235-208 and -209 further provide that a city council may, "in its discretion," provide that a "sanitary board" will assume operational control of the system — a provision I read as implicitly authorizing the city council to dissolve an existing sewer committee, but only if a sanitary board assumes the committee's duties. Subsection14-235-208(a)(2)(A) of the Code provides that a sanitary board will consist of the mayor and two appointees who have not served the city as officers or employees for at least one year. Unlike the statutory scheme at issue in Ward, then, nothing in subchapter 2 either expressly or implicitly suggests that a city council could abolish a sewer committee and exercise unmediated supervisory control over a sewer system.
In contemplating the possibility of dissolving the sewer committee, you specifically refer in your question to A.C.A. § 14-235-206(a)(2), which provides: "The council may remove any member of the committee, with or without cause, and may appoint any substitute members in case of death, removal, or resignation." I do not believe the council could exercise this power of removal as a practical means of effectively abolishing the sewer committee. As the court noted in Ward: "The removal of one or more commissioners for cause cannot be equated with the abolishment of the commission itself." 280 Ark. at 178. In my opinion, if the sewer committee is indeed failing to perform its functions owing to "continuous vacancies and no regular meeting," the only available remedy is for the city council by ordinance to dissolve the committee and establish a sanitary board.
Question 2: Can the city council serve as the Sewer Committee with anappointed Superintendent?
In my opinion, the answer to this question is "no."
As reflected in my response to your previous question, A.C.A. §14-235-206(a)(1)(B) directs that a sewer committee "will function under the control of the council to such extent as may be provided in the ordinance or resolution appointing the committee." Although the Code at no point specifies the potential scope and nature of the referenced "control," it at least appears clear that the legislature intended the city council to serve as a monitor of the sewer committee's actions.
Given this relationship between the city council and the sewer committee, I believe it would offend what is known as the common-law doctrine of "incompatibility" for city council members to serve on a sewer committee. As a general proposition, it is impermissible for any person to hold two offices that are "incompatible" — i.e., offices in which "there is a conflict of interests," as "where one office is subordinate to the other," Byrd v. State, 240 Ark. 743, 745,402 S.W.2d 121 (1966), where "the discharge of the duties of the one conflict[s] with the duties of the other, to the detriment of the public good," State ex rel. Murphy v. Townsend, 72 Ark. 180
(1904), or where "one [office] is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other," Tappan v. Helena Fed.Savings Loan Assn., 193 Ark. 1023,103 S.W.2d 458 (1937). Accord, Thompson v. Roberts, 333 Ark. 544,970 S.W.2d 239 (1998). In my opinion, the council's power to remove sewer committee members, A.C.A. § 14-235-206(a)(2), and its variable duty to oversee the sewer committee, A.C.A. § 14-235-206(a)(1)(B), would render it impermissible for a council member to serve as a sewer committee member. Compare Ark. Op. Att'y Gen. No. 98-035
(opining that even a water and sewer department employee who answered to the committee, so long as qualified as an "officer" of the city, would be precluded from serving as a city council member). I am bolstered in this conclusion by the fact that A.C.A. § 14-235-208(a)(2)(A), in setting forth the alternative qualifications for service on a sanitary board, imposes a requirement that the two appointees on the board have not served as officers or employees of the city for at least one year.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh