The Honorable Johnnie Bolin State Representative 511 Ashley Road 20 Crossett, AR 71635-9434
Dear Representative Bolin:
You have presented the following questions for my opinion:
 (1) Does the chairman or a member of the North Crossett Utilities Board have the right to run for office while serving in his or her capacity as chair/member of the Board?
 (2) Does the chairman or a member of the North Crossett Utilities Board if elected to office, have the right to continue to serve in his or her capacity on the Board?
You indicate that your questions arise out of concern about the Chairman of the North Crossett Utilities Board possibly running for the position of County Judge.
RESPONSE
Question 1 — Does the chairman or a member of the North CrossettUtilities Board have the right to run for office while serving inhis or her capacity as chair/member of the Board?
It is my opinion that the answer to this question will depend in large part upon the nature of the North Crossett Utilities Board. You have not indicated the nature of the Board or the statutory authority under which it was created.
As a general matter, Arkansas law protects the right to run for office.See, e.g., A.C.A. § 21-1-207 (expressly permitting state and localemployees to run for public office);[1] MacBride v. Exon,558 F.2d 443, 448 (8th Cir. 1997) (state's restriction of one's ability to become a candidate for public office is "severely circumscribed by the Constitution."); Fisher v. Taylor, 210 Ark. 380, 196 S.W.2d 217 (1946) (right to be a candidate for public office is a fundamental one which should not be curtailed without good cause). See also Ops. Att'y Gen. Nos. 2000-103; 98-110; 94-256. However, some restrictions are legitimately placed upon the ability to run for office. For example, the federal "Hatch Act," codified at 5 U.S.C.A. § 1501 et seq., provides that state or local officers or employees who are covered by the Act may not be candidates for elective office. 5 U.S.C.A. § 1502(a)(3). The Act applies to individuals whose principal employment by a state or local agency is in connection with an activity that is financed in whole or in part by loans or grants made by the United States or a federal agency.5 U.S.C.A. § 1501(4). Non-partisan races and candidates for those races are exempted from the Hatch Act. 5 U.S.C.A. § 1503. The Hatch Act may apply to the situation out of which your questions arise if the Board or any of its functions are federally funded and the individual's responsibilities on the Board are related to those federally-funded functions. The question of whether the Hatch Act applies is a question of fact. For a thorough discussion of the Hatch Act, see Op. Att'y Gen. No. 2003-273.
Arkansas law also places some restrictions on the ability to run for office. In addition to routine procedural requirements for candidates,see generally A.C.A. § 7-7-101 et seq., the statutes governing certain specific positions and subject areas contain specific limitations on candidacy. See, e.g., A.C.A. § 14-47-109 (persons aged 21 eligible to run for office of city director); A.C.A. § 7-4-109 (members of county election commission not eligible to be a candidate for any office); A.C.A. § 7-6-102 (person having felony conviction must have record expunged in order to be a candidate for certain offices) A.C.A. §14-49-202; A.C.A. § 14-50-202; A.C.A. § 14-51-202 (members of municipal civil service commissions may not be candidates for any office). I have not located any provision that would prohibit a utilities board member or chairman from running for the position of county judge.[2]
However, the individual in question should consult his political party's rules concerning candidacy. Political parties are authorized to "determin[e] the qualifications of candidates seeking nomination by the political party[.]" A.C.A. § 7-7-201(b)(5). Although it is not entirely clear whether this provision envisions the parties establishing specific rules for eligibility, or whether it simply refers to the parties' responsibility to verify the eligibility of their candidates, see A.C.A. § 7-7-301(b), it is nevertheless conceivable that political parties may have adopted some policy concerning candidates who hold other offices.
Question 2 — Does the chairman or a member of the North CrossettUtilities Board if elected to office, have the right to continueto serve in his or her capacity on the Board?
Again, it is my opinion that the answer to this question will depend in large part upon the nature of the North Crossett Utilities Board.
Dual office holding principles will come into play only if the North Crossett Utilities Board is a municipal or other public entity. (However, even if the Board is a private entity, the common law principles that govern conflicts of interest will impact some aspects of the dual service. This issue will be discussed later in this opinion.)
The Arkansas Supreme Court has identified three types of legal prohibitions to the concurrent holding of two public offices: Constitutional prohibitions, statutory prohibitions, and common law prohibitions (i.e., the common law "doctrine of incompatibility"). Byrdv. State, 240 Ark. 743, 402 S.W.2d 121 (1966).
Constitutional and Statutory Prohibitions
It is my opinion that no constitutional provisions prohibit dual service as a municipal utilities board member and county judge. However, various statutory provisions must be consulted to determine whether they operate to prohibit this (or other types of) dual service. For example, if the North Crossett Utilities Board was created under the authority of A.C.A. § 14-201-101 et seq. (authorizing the creation of a municipal utilities commission), the individual cannot hold the second office. The section of that set of laws that governs the commission authorized thereunder states:
 (c)(1) No member of the commission shall hold any elective office under the municipal, county, state, or federal government while a member of the commission.
A.C.A. § 14-201-105(c)(1).
Various other statutes that authorize the creation of certain types of utility-related boards and commissions may be applicable if the Board in question was created thereunder. See, e.g., A.C.A. § 14-234-116 (water and sewer board); A.C.A. § 14-234-201 et seq. (waterworks commission); A.C.A. § 14-235-206 et seq. (sewer committee). Although these statutes do not appear on their face to prohibit already-sitting board members from holding other offices, counsel for any interested party should consult any of these statutes that may be applicable to the Board in question to determine whether, under the specific facts of the situation, the dual service would be prohibited. (For example, these boards are generally governed by the same laws that govern city councils. See, e.g., A.C.A. §14-234-307(a)(2). City council members are prohibited from holding othercity offices, but not from holding county offices. A.C.A. §14-42-107(a)(2).)
Common Law Incompatibility
Assuming that the dual office holding in question is not prohibited by any constitutional provision or any statutory provision (such as A.C.A. § 14-201-105, as discussed previously), it will be necessary to consider whether the dual service is prohibited by the common law doctrine of incompatibility. It is my opinion that the holding of the two positions in question (i.e., membership on the Utilities Board and county judge) is not prohibited by the common law doctrine of incompatibility. Under this doctrine, it is impermissible for any person to hold two offices that are "incompatible." See Thompson v. Roberts, 333 Ark. 544, 970 S.W.2d 239
(1998). The Arkansas Supreme Court has stated that two offices are "incompatible" if "there is a conflict of interests." Byrd v. State,240 Ark. 743, 745, 402 S.W.2d 121 (1966). A conflict of interests exists in situations (among others) "where one office is subordinate to the other."Id. The Court has also described the incompatibility of two offices as situations in which "the discharge of the duties of the one conflict[s] with the duties of the other, to the detriment of the public good," Stateex rel Murphy v. Townsend, 72 Ark. 180 (1904), and as situations in which "one [office] is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other." Tappan v. Helena Fed. Savings Loan Assn.,193 Ark. 1023, 103 S.W.2d 458 (1937). Accord, Thompson v. Roberts,333 Ark. 544, 970 S.W.2d 239 (1998). In my opinion, the positions of Utilities Board member (or chairman) and county judge are not incompatible, as that principle has been described by the Arkansas Supreme Court, because county judges do not exercise authority over municipal utilities boards.
Common Law Conflict of Interest
If dual service as Utilities Board member and county judge is not prohibited by any of the dual office holding principles, the situation could, nevertheless (whether or not the Board is a municipal entity), give rise to isolated situations in which a common law conflict of interest could arise. Such instances would arise when the particular facts of a situation would divide the individual's allegiance between the duties of the two positions. In such instances, the individual should abstain from participation in any decision-making that would require him to act in the interest of one position at the expense of the interest of the other.
The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
67 C.J.S. Officers § 204. See also Ops. Att'y Gen. Nos. 2002-273; 2001-042; 2000-072; 99-349; 98-275; 94-283; and 94-446, citing VanHovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v.United States Associates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); AcmeBrick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am. Jur.2d, Public Officers and Employees § 321.
The common law proscription of conflicts of interest is bolstered by the Arkansas Code of Judicial Conduct, which are applicable to the judicial functions of the county judge, as set forth in A.C.A. §14-14-1301(a)(1)(iii). See Ark. Code of Judicial Conduct ("Application of the code of judicial conduct," § C and commentary thereto.) Numerous provisions of the Code of Judicial Conduct could be implicated by a situation in which a county judge also holds either another public office or a private position, the functions of which could divert his allegiance from his duties as county judge.
If the individual in question finds that a situation has arisen in which the interests of the two positions are in conflict, he should abstain from participating in any decision concerning that situation. See, e.g.,
Ops. Att'y Gen. Nos. 2001-042; 2000-072.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] It is my opinion that A.C.A. § 21-1-207 applies only to employees, and not to officers. See Op. Att'y Gen. No. 2001-127.
[2] It should be noted that the state election laws require that candidates for public office be "qualified and eligible" to hold the office "at the time of filing" for candidacy. See A.C.A. § 7-5-207(b). It is not clear whether this provision should be interpreted to prevent thecandidacy of a person who already holds a public office, on the grounds that the person would be prohibited by dual office holding principles from holding the second office. The Arkansas Supreme Court has never addressed this issue.