The Honorable Willie Hardy State Representative 518 Warner Street Camden, AR 71701
Dear Representative Hardy:
I am writing in response to your request for an opinion on the following:
 May a First-Class city's elected (`part time') City Attorney legally work full time as a State attorney/employee for the Arkansas Office of Child Support Enforcement (or at another non-elected State job), if fulfilling the duties of both employments does not interfere or conflict with either employment, or with either entity's employee policies?
 NOTE: If elective office duties occasionally arise during normal State working hours, the attorney either appropriately uses earned leave time to personally attend to any such duties, or appoints a Deputy City Attorney, who properly fulfills those obligations.
 RESPONSE
In my opinion, there are no constitutional or statutory prohibitions on the dual service of a city attorney for a city of the first class and an attorney for the Arkansas Office of Child Support Enforcement ("OCSE") of the Department of Finance 
Administration. The common-law doctrine of incompatibility does not appear, in my opinion, to be an impediment to the holding of simultaneous positions assuming that the factual scenario described in your request for an opinion is true. Any potential common law conflicts of interest must be addressed on a case-by-case basis with the dual officer holder recusing himself or herself from making decisions when such a conflict exists. Please see below for a more thorough analysis. I do note that, absent further information, I am unable to address whether there are potential federal "Hatch Act" violations. Consultation with local counsel may help resolve this question.
Please note that I am unable to address the expansive parenthetical ("or at another non-elected state job"), included in your request for an opinion. The non-elected state jobs are legion and attempting to address such an open-ended and potentially voluminous query is beyond the scope and practicalities of an official Attorney General's opinion.
Prohibitions against dual office-holding may arise from constitutional, statutory, or common-law prohibitions. In my opinion, there are no constitutional or statutory prohibitions to the dual service posited in your request for an opinion.
I have previously described the common law doctrine of incompatibility as follows:
 As described by the Court, the "inconsistency, which at common law makes offices incompatible" exists in situations when "one is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other." Tappan v. Helena Fed. Savings Loan Assn., 193 Ark. 1023, 1024, 103 S.W.2d 458 (1937). Accord Thompson v. Roberts, 333 Ark. 544, 970 S.W.2d 239 (1998). The Court in Thompson further expounded upon the incompatibility doctrine by stating:
 One commentator has explained, `Incompatibility arises, therefore, from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where the antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both.' Eugene McQuillin, 3 The Law of Municipal Corporations § 12.67 (3d ed. 1990).
 333 Ark. at 549.
 In Thompson, the Court held that the dual service of a mayor as part-time bookkeeper for a city of the second class violated the doctrine of incompatibility and a statute (A.C.A. § 14-42-107). Id. at 549-50. As one of my predecessors observed, the position of bookkeeper in that case obviously did not meet the judicial criteria for an "office," which usually involves the exercise of sovereign power in some measure, as well as such factors as the taking of an oath of office, the receipt of a formal commission, and the giving of a bond. Ark. Op. Att'y Gen. 1998-108; Maddox v. State, 220 Ark. 762, 249 S.W.2d 972 (1952). Accordingly, although previous Attorney General's opinions had concluded that the holding of two offices, as opposed to the holding of one office and one employment, is a necessary prerequisite to the applicability of the incompatibility doctrine, this office has since focused on the potential "antagonism" between two positions, and whether service in both capacities is "repugnant" in the sense discussed in Thompson, supra. Ark. Ops. Att'y Gen. Nos. 2003-371 (concluding that question whether dual service as city recorder/treasurer and hourly employee of the mayor is barred by the incompatibility doctrine is a question of fact). See also 1999-052 (relying on Thompson to opine that a mayor could not simultaneously serve as a city employee) and 1998-108 ("Any inherent exercise on the part of the City Recorder of supervisory power over the `water clerk' position will lead to [an unlawful conflict of interest].").
Op. Att'y Gen. 2006-066.
In my opinion, the doctrine of incompatibility does not appear to prohibit the service described in your request for an opinion. Although the issue is one of fact, there does not appear to be any oversight or supervisory authority of one of the positions over the other, and none of the other factors indicating incompatible duties appear evident. This appears to obviate any potential doctrine of incompatibility concerns.
If there is no incompatibility serious enough to preclude the simultaneous holding of the two positions, common law conflicts of interest must nonetheless be addressed on a case-by-case basis as they arise. I have described the common law conflict of interest doctrine as follows:
 In Ark. Op. Att'y Gen. No. 1995-099, this office set forth the standard for determining whether a public officer faces a conflict of interests:
 With regard, generally, to the existence of a conflict, it has been stated that the phrase "conflict of interest," when used to suggest disqualification of a public official from performing his or her duties, ordinarily refers to "a clash between the public interest and the private pecuniary interest of the individual concerned." Gardner v. Nashville Housing Auth., 514 F.2d 38 (6th Cir. 1975). The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler, 164 So.2d 260, 263
(Fla.App. 1964). See also generally 63A Am. Jur. 2d Public Officers and Employees § 321 (1984).
 The furtherance of the officer's personal interest is thus the focal point of the unlawful conflict of interest theory. See Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940).
 I have elaborated upon this principle as follows:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw. [Citations omitted.]
 The above-quoted policy statement concerning conflicts of interest makes clear that in situations where a common law conflict of interest is present, it may be appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her personal interests, so as to avoid the temptation of placing his self-interest above those he was chosen to represent.
 Op. Att'y Gen. 2004-160.
Op. Att'y Gen. 2006-066.
Under this doctrine, if a conflict of interest between the two positions arises, the individual should refrain from participating in the decision-making process involved. While the two positions mentioned in your request for an opinion would not appear to have a great likelihood of generating conflicts of interest, were one to arise the above quoted material should be heeded.
Finally, the federal "Hatch Act," 5 U.S.C.A. §§ 1501 through -1508 (West 1996), must be considered. The "Hatch Act" prohibits an employee whose principal employment by a state or local agency is in connection with an activity that is financed in part or in whole by loans or grants made by the United States or a federal agency from running for office in a partisan election. See,e.g., Op. Att'y Gen. 2004-160. I have not been supplied with information regarding the office of City Attorney in this instance. A municipality may hold partisan elections for municipal offices. A.C.A. § 14-42-206 (Supp. 2005) (setting forth the procedural requirements for a municipality to hold partisan elections). If a municipality has resolved to hold a partisan election, the source of funding for the activity undertaken at OCSE must be analyzed to determine whether a "Hatch Act" prohibition would apply. As I noted in Op. Att'y Gen. 2004-162, the "appropriate office to contact is the Office of Special Counsel, 1730 M Street NW, Suite 300, Washington, D.C. 20036 or 1-800-854-2824. In addition, helpful information is available at the website for the U.S. Office of Special Counsel: www.osc.gov."
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
MB:JMD/cyh