The Honorable Sharon Trusty State Senator Post Office Box 9026 Russellville, AR 72811
Dear Senator Trusty:
I am writing in response to your request for an opinion on the following:
1. Pursuant to Rule 45 of the Arkansas Rules of Civil Procedure which Arkansas Code Annotated § 16-43-211 requires the issuance of criminal subpoenas follow, can a municipal law enforcement officer issue subpoenas in criminal cases over the telephone in the same manner that a sheriff or his deputies can?
2. Does A.C.A. § 14-43-501(b)(1)(B) allow a mayor of a city of the first class to cast a vote in the affirmative to compose a two-thirds (2/3) majority of the city council to dispense with the rule requiring ordinances to be read fully on three (3) different days as stated by A.C.A. § 14-55-202?
3. Is there any type of publication notice requirement for a successfully filed municipal referendum petition on a resolution or ordinance under Amendment 7 to the Constitution of the State of Arkansas or under A.C.A. § 7-9-101 et. seq.? If so, what would the publication notice be and who would bear responsibility of fulfilling the publication notice requirement?
4. Can a current alderman of a city of the first class also be appointed by the quorum court of the county in which he lives to serve as a commissioner of a regional intermodal facilities board as created by A.C.A. § 14-143-101 et. seq. or is the alderman prohibited by state law, a conflict of interest or by the common law doctrine of incompatibility from serving as both an alderman and a commissioner?
5. Does Arkansas state law or the Arkansas Constitution prohibit a city council of a city of the first class from passing an ordinance term limiting the number of terms a person can serve on a: Planning Commission, Civil Service Commission, Advertising and Promotion Commission, a Regional or Municipal Airport Commission, a Board of Zoning Adjustment, a Recreation and Parks Commission, a Regional Intermodal, Facility Board, a Housing Authority or a Criminal Nuisance Abatement Board if all the aforementioned Commissions or Boards are created by state statute?
RESPONSE
With respect to your first question, in my opinion a municipal law enforcement officer does not fall within the plain and ordinary language of Rule 45(c) of the Arkansas Rules of Civil Procedure that authorizes the sheriff of a county or one of the sheriff's deputies to issue a subpoena in a criminal case over the telephone if the person being subpoenaed resides within the county where the trial is to occur. My immediate predecessor opined that the answer to your second question is unclear and that legislative clarification or judicial interpretation is warranted. I agree with this conclusion and have enclosed copies of Ops. Att'y Gen. 2004-326 and 2005-006 for your convenience. With respect to your third question, in my opinion there is no state statute governing the publication requirements for a local referendum. A municipal ordinance may address the issue. With respect to your fourth question, in my opinion, there is no conflict of interest or common law doctrine of incompatibility prohibition that would prevent an alderman from being appointed to a regional intermodal facilities board. The alderman, however, should be aware of potential conflicts of interest and recuse himself or herself from consideration of issues in such situations. With respect to your fifth question, in my opinion each board or commission must be analyzed separately. I will address each entity individually below.
Question One: Pursuant to Rule 45 of the Arkansas Rules of Civil Procedure which Arkansas Code Annotated § 16-43-211 requires the issuance of criminal subpoenas follow, can a municipal law enforcement officer issue subpoenas in criminal cases over the telephone in the same manner that a sheriff or his deputies can?
No. The plain and ordinary language of Rule 45 of the Arkansas Rules of Civil Procedure specifies that "a sheriff or his deputy" may issue criminal subpoenas over the phone in specific circumstances. A municipal law enforcement officer is not a sheriff.
Arkansas Code Annotated § 16-43-211 (Repl. 1999) states in pertinent part:
The provisions of the Code of Practice in Civil Cases shall apply to and govern summoning and coercing the attendance of witnesses and compelling them to testify in all prosecutions and all criminal or penal actions or proceedings, except that the attendance of witnesses residing in any part of the state may be coerced, and it shall never be necessary to tender to the witnesses any compensation for expenses or otherwise before process of contempt shall issue.
As noted in your request for an opinion, this provision requires compliance with Arkansas Rule of Civil Procedure 45 (2007), which states in pertinent part:
(c) Service. A subpoena for a trial or hearing or for a deposition may be served at any place within this State in the manner prescribed in this subdivision. A subpoena for a trial or hearing or for a deposition may be served by the sheriff of the county in which it is to [sic] served, by his deputy, or by any other person who is not a party and is not less than eighteen (18) years of age. Service shall be made by delivering a copy of the subpoena to the person named therein; provided, however, that a subpoena for a trial or hearing may be served by telephone by a sheriff or his deputy when the trial or hearing is to be held in the county of the witness' residence. A subpoena for a trial or hearing or for a deposition may also be served by an attorney of record for a party by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or agent of the addressee.
(emphasis added). Your request requires that I interpret the provisions of Rule 45. With respect to interpreting court rules, the Arkansas Supreme Court recently reiterated the following:
It is well settled that we construe court rules using the same criteria, including canons of construction, that are used to interpret statutes. See Cortinez v. Arkansas Supreme Court Comm. On Prof'l Conduct, 353 Ark. 104, 111 S.W.3d 369; Gannett River States Pub. Co. v. Ark. Judicial Discipline and Disability Comm'n, 304 Ark. 244,801 S.W.2d 292 (1990).
Ligon v. Stewart, Slip Op. at 5 (No. 06-260, Apr. 12, 2007). With regard to statutory interpretation, the Arkansas Supreme Court has stated as follows:
The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. Weiss v. McFadden,353 Ark. 868, 120 S.W.3d 545 (2003). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Weiss v. McFadden, supra. When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Id.
Macsteel, Parnell Consultants v. Ar. Ok. Gas Corp., 363 Ark. 22, ___ S.W.3d ___ (2005); see also Ops. Att'y Gen. 2005-072 2004-339.
The plain and ordinary language of Rule 45 states that a sheriff or the sheriff's deputy may serve a subpoena by telephone as quoted above. A sheriff is an elected county officer. See A.C.A. § 14-14-1301(a)(5) (Supp. 2005). This does not, by its plain and ordinary language, include a municipal law enforcement officer, who would be a "municipal" or city law enforcement officer. In my opinion, Rule 45 of the Arkansas Rules of Civil Procedure does not allow a municipal law enforcement officer to issue subpoenas by telephone in the same manner as a sheriff.
Question Two: Does A.C.A. § 14-43-501(b)(1)(B) allow a mayor of a city of the first class to cast a vote in the affirmative to compose a two-thirds (2/3) majority of the city council to dispense with the rule requiring ordinances to be read fully on three (3) different days as stated by A.C.A. § 14-55-202?
My immediate predecessor addressed this issue in Ops. Att'y Gen.2004-326 and 2005-006. My predecessor specifically noted that while the Mayor of a mayor-council form of government is authorized to vote to pass "any motion," it was unclear whether the Mayor would be counted towards the number of votes necessary to carry the motion. Op. Att'y Gen. 2005-006. The mathematical irregularities described in Op. Att'y Gen. 2005-006 led my predecessor to conclude:
It is my opinion that the law on this issue is currently unclear and can only be clarified by judicial interpretation of the applicable statutes, or by legislative clarification of those statutes. The statutes involved, the case law precedent, and the legislative intent of the statutes create a number of problematic results and I cannot opine on which interpretation a court would adopt in this situation.
Op. Att'y Gen. 2005-006 at 2.
I agree with my predecessor that the Mayor of a mayor-council municipal government may vote to pass a motion to suspend the rules under A.C.A. § 14-55-202 but that it is unclear whether the Mayor would also be counted as part of the total number of members of the city council in determining the number required to meet the two-thirds requirement. I have enclosed copies of Ops. Att'y Gen. 2004-326 and 2005-006 for your convenience.
Question Three: Is there any type of publication notice requirement for a successfully filed municipal referendum petition on a resolution or ordinance under Amendment 7 to the Constitution of the State of Arkansas or under A.C.A. § 7-9-101 et. seq.? If so, what would the publication notice be and who would bear responsibility of fulfilling the publication notice requirement?
In my opinion, there is no clear State law definition of the "publication notice requirements" for a local referendum filed under Amendment 7 to the Arkansas Constitution. See Ark. Const. Art. 5, § 1. While publication is required pursuant to Article 5, § 1, and that same constitutional provision authorizes municipalities to pass ordinances detailing the procedural requirements for local referendums, there is no state law establishing the specific procedural requirements in the absence of such a local ordinance. Reference must be had, instead, to any pertinent local ordinances. See, e.g., Op. Att'y Gen. 90-123.
Amendment 7 to the Arkansas Constitution, as incorporated into Article 5, § 1 states in pertinent part that "[a]ll measures submitted to a vote of the people by petition under the provisions of [Amendment 7] shall be published as is or hereafter may be provided by law." With regard to municipal and county initiatives and referendums, Article 5, § 1 states in pertinent part:
The initiative and referendum powers of the people are hereby further reserved to the legal voters of each municipality and county as to all local, special, and municipal legislation of every character in and for their respective municipalities and counties . . . [.]
* * *
Municipalities may provide for the exercise of the initiative and referendum as to their local legislation.
Id. (emphasis added).
I have not been informed of any ordinances governing the publications of local referenda in your request. Furthermore, it appears that the publication requirements of A.C.A. §§ 7-9-113 (Repl. 2000 Supp. 2005) are inapplicable to local referenda.
That statute sets forth specific requirements with respect to the publication of approved state-wide referenda and initiatives. It provides in pertinent part:
(b)(1) Before the election at which any proposed or referred measure is to be voted upon by the people, notice shall be published in two (2) weekly issues of some newspaper in each county as is provided by law.
This code section uses the word "measure," which is defined as an "amendment" or "act." A.C.A. § 7-9-101(6) (Repl. 2000). An "act" is specifically defined as an act that will have statewide effect. Id. at (1). Likewise, an "amendment" is defined as a proposed statewide amendment to the Arkansas Constitution. Id. at (2). Therefore, A.C.A. § 7-9-113 does not apply to a local measure, such as the one referenced in your request.
One of my predecessors, in addressing which provisions of A.C.A. §§7-9-101 though-123 apply to municipal measures, specifically noted that the applicable local legislation must be consulted. Op. Att'y Gen.90-123. I agree with my predecessor that the guidelines and procedures established by a municipality in accordance with Amendment 7 to the Arkansas Constitution must be considered. In my opinion, a local ordinance may properly establish the publication requirements for "the exercise of the initiative and referendum" on a city level in accordance with Amendment 7.
Question Four: Can a current alderman of a city of the first class also be appointed by the quorum court of the county in which he lives to serve as a commissioner of a regional intermodal facilities board as created by A.C.A. § 14-143-101 et. seq. or is the alderman prohibited by state law, a conflict of interest or by the common law doctrine of incompatibility from serving as both an alderman and a commissioner?
In my opinion, there is no constitutional, statutory, or common law impediment to an alderman serving as a county appointed commissioner to a regional intermodal facilities board. The alderman must, however, be aware of any conflicts of interest that may arise while serving in both positions and should recuse himself or herself in such instances. This is a factually specific determination and any factors that have not been presented or addressed in this opinion should be evaluated by local counsel.
The Arkansas Supreme Court has held that there are three possible types of legal prohibitions to the concurrent holding of two offices: Constitutional prohibitions, statutory prohibitions, and common law prohibitions (i.e., the common law "doctrine of incompatibility"). Byrd v. State, 240 Ark. 743, 402 S.W.2d 121 (1966). There do not appear to be any constitutional prohibitions implicated in your request.
The statutory prohibition on conflicts of interest for alderman states in pertinent part:
(a)(1) No alderman, member of any council, or an elected official of a municipal corporation, during the term for which he or she has been elected or one (1) year thereafter, shall be appointed to any municipal office that was created or the emoluments of which have been increased during the time for which he or she has been elected.
(2) No alderman or council member shall be appointed to any municipal office, except in cases provided for in §§ 14-36-101 et seq. — 14-61-101
et seq., during the time for which he or she may have been elected.
A.C.A. § 14-42-107 (Repl. 2005). I agree with my predecessor that a regional intermodal facilities board is a regional entity, and not a municipal entity. Op. Att'y Gen. 2004-230. This precludes the position of commissioner from being a "municipal office" within the meaning of this statute. Therefore, the prohibition in A.C.A. § 14-42-107 does not apply.
With regard to any possible common law prohibitions, the common law doctrine of incompatibility has been described as follows:
[I]t is impermissible for any person to hold two positions that are "incompatible." The Arkansas Supreme Court has stated that two positions are "incompatible" if "there is a conflict of interests." Byrd,240 Ark. at 745. A conflict of interests exists in situations (among others) "where one office is subordinate to the other." Id. The Court has also described the incompatibility of two offices as situations in which "the discharge of the duties of the one conflict[s] with the duties of the other, to the detriment of the public good," State ex rel. Murphy v. Townsend, 72 Ark. 180 (1904), and as situations in which "one [position] is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other or to audit the accounts of the other." Tappan v. Helena Fed. Savings Loan Assn.,193 Ark. 1023, 103 S.W.2d 458 (1937).
The [Thompson v. Roberts, 333 Ark. 544, 970 S.W.2d 239 (1998)] court found that dual service as bookkeeper and mayor violated the doctrine of incompatibility. The court explained:
While the trial court found that appellants had proved no wrongdoing except "performing two jobs," it is that very inconsistency which is the basis of the incompatibility doctrine. One commentator has explained, "Incompatibility arises, therefore, from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where the antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both." Eugene McQuillin, 3 The Law of Municipal Corporations § 12.67 (3d ed. 1990).
Thompson, supra, at 549.
Op. Att'y Gen. 2004-126. There does not appear to be the required supervisory control, as described above, between the positions of city alderman and commissioner of a regional intermodal facilities board. It is unclear, however, from your request whether the city on whose council the alderman serves is a party to the intermodal facilities agreement establishing the board. If the city is not a member of the intermodal facilities agreement, no conflict would appear to exist.
If the city on whose council the alderman sits is a party to the intermodal facilities agreement in A.C.A. § 14-143-103 (Repl. 1998), it must be noted that A.C.A. § 14-143-124(b)(1) (Repl. 1998) specifies that each year, the board will send copies of an audit to the governing body of each constituent city or county. Furthermore, A.C.A. § 14-143-124(c) states that the agreement to establish a board may include provisions that require the board submit its budget to constituent member municipalities for "approval." If a governing body of a municipality that is party to the intermodal facilities board agreement has the authority to approve or deny the budget of the board, the question of whether the prohibited supervisory control exists would be closer. In my opinion, this factor, standing alone, is likely not sufficient to render the dual service incompatible.
While the alderman may be able to serve as a commissioner simultaneously, several situations could arise where it would be prudent for the alderman recuse from participation in both the board and council, such as the instance of "approval" of the budget noted above. Under previous law, several of my predecessors' addressed an alderman serving simultaneously as a justice of the peace,[1] concluding that, while there was no prohibition at the time against such dual service, "prudenc[e] would dictate that an individual simultaneously occupying both offices recuse from participation in certain matters, such as an administrative matter impacting an agreement between the two political subdivisions served by the officer." Op. Att'y Gen. 94-372; see also Op. Att'y Gen. 88-329.
Specifically, the alderman should be aware of situations where a municipality is authorized to make contributions to the board, A.C.A. § 14-143-123(a) (Repl. 1998); to transfer property to the board and contribute to the costs of acquiring and operating facilities, A.C.A. § 14-143-125 (Repl. 1998); and to invest funds in bonds issued by the board, A.C.A. § 14-143-128 (Repl. 1998).
Question Five: Does Arkansas state law or the Arkansas Constitution prohibit a city council of a city of the first class from passing an ordinance term limiting the number of terms a person can serve on a: Planning Commission, Civil Service Commission, Advertising and Promotion Commission, a Regional or Municipal Airport Commission, a Board of Zoning Adjustment, a Recreation and Parks Commission, a Regional Intermodal, Facility Board, a Housing Authority or a Criminal Nuisance Abatement Board if all the aforementioned Commissions or Boards are created by state statute?
In my opinion, the specific language of each statutory scheme must be analyzed to determine whether the city has the power to impose term limits, a form of eligibility qualification, on each board or commission.
A term limit on service is a qualification for eligibility to hold an office or position. See U.S. Term Limits, Inc. v. Hill, 316 Ark. 251,266, 872 S.W.2d 349 (1994) ("An additional qualification has been added to congressional eligibility. The list now reads age, nationality, residency, and prior service.") (emphasis added); see also Allred v. McLoud, 343 Ark. 35, 40, 31 S.W.3d 836 (2000) ("The Madison County initiative, however, adds the requirement that for a candidate for county office to be eligible, he or she must not only be a qualified elector as required by law but also must not have served five two-year terms."). The question you have asked is whether a city of the first class has the power to create or modify the qualifications of a member or commissioner of the boards and commissions referenced. My immediate predecessor describes the extent of municipal authority as follows:
Municipal corporations of the first class are "authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to [their] municipal affairs including, but not limited to, the power to tax." A.C.A. § 14-43-602 (Repl. 1998). Despite this grant of authority, it is clear that municipal corporations in Arkansas cannot pass any laws contrary to the general laws of the State. See Arkansas Const. Art. 12, §§ 3 and 4; and Nahlen v. Woods,255 Ark. 974, 504 S.W.2d 749 (1974). In addition, despite the seemingly broad grant of authority in A.C.A. § 14-43-602 (adopted in 1971), the Arkansas Supreme Court has continued to hold that a city possesses only those powers that are expressly granted by the Constitution or the General Assembly, necessarily incident to the execution of those granted powers, or powers that are indispensable, and not merely convenient, to their objects and purposes. Cosgrove v. City of West Memphis,327 Ark. 324, 326, 938 S.W.2d 827 (1997); see also Op. Att'y Gen. 2004-046. In addition, substantial doubt as to the existence of a power in a municipal corporation must be resolved against it. Cosgrove, supra (citing City of Little Rock v. Cash, 277 Ark. 494, 501, 644 S.W.2d 229
(1982)).
2005-018.
There is no express grant of authority to enact term limits on boards and commissions in the general laws governing a municipal corporation, A.C.A. §§ 14-42-101 through-117 (Repl. 1998 Supp. 2005) and A.C.A. §§ 14-43-201 through-607 (Repl. 1998 Supp. 2005). Nor can it be said that term limits would be "indispensable, and not merely convenient" to the city's objects and purposes. The question appears to be whether any of the statutes that establish the various boards and commissions either directly grant the city that authority or whether such authority would necessarily be incident to the authority granted. When the qualifications for an office are listed by statute, however, the Arkansas Supreme Court has held that an attempt to impose term limits runs contrary to the "general laws of the state." Allred, supra at 40. While Allred addressed elected county offices, the reasoning, in my opinion, would apply to the question you have posed as well. In Allred, the Arkansas Supreme Court held that a Madison County initiative measure that sought to impose term limits on county officials was invalid because it was contrary to the "general laws of the state" with respect to county offices whose qualifications where prescribed by statute. Id. The court concluded that the initiative would have been contrary to state law by imposing additional qualifications on the offices. Id. If the qualifications for the positions in your request are delineated by statute, in my opinion following the reasoning of Allred, the municipality would also be barred from imposing term limits. I will briefly address each board or commission in turn.
Planning Commission
In describing the membership of a planning commission, A.C.A. §14-56-405 (Supp. 2005) states that "Appointment and terms of the members of the planning commission shall be as provided by city ordinance." (emphasis added). The only qualification requirement is found in A.C.A. § 14-56-404 (Repl. 1998), which requires that two-thirds of the members of the planning commission hold no other "municipal office or appointment except membership in a board of adjustment or a joint planning agency." In delegating to municipalities the authority to prescribe by ordinance the manner and method of appointment and the terms of members, in my opinion, the General Assembly also delegated a necessarily incidental authority over the qualifications for appointment that may be exercised by ordinance. Because, as noted above, the Arkansas Supreme Court has characterized term limit provisions as a qualification for office, it appears that a municipality may, by ordinance, enact term limits on the service of planning commissioners.
Civil Service Commission
Unlike in the case of the planning commission described above, the qualifications to serve as a Civil Service commissioner are delineated by statute. Specifically, A.C.A. § 14-50-202 requires that commissioners be citizens of Arkansas, residents of the municipality for at least three years, and not hold or run for any political office. Id. at (a) through (b). Similar to Allred, supra, the statute sets forth qualifications for serving on the civil service commission. In my opinion, this precludes incidental authority for the municipality to impose the additional qualification of term limits for service on a civil service commission.
Advertising and Promotion Commission
An Advertising and Promotion Commission, like a civil service commission discussed above, has specific eligibility requirements set forth in A.C.A. § 26-75-605 (Supp. 2005). As noted above in addressing the civil service commission, the statutory requirements preclude a municipality from creating additional eligibility requirements, such as term limits.
Municipal Airport Commission
The specific eligibility requirements for serving on a municipal airport commission are set forth in A.C.A. § 14-359-104 (Supp. 2005). As noted above in addressing the civil service commission, in my opinion the existence of statutory eligibility requirements precludes a municipality from enacting additional eligibility requirements, such as term limits.
Regional Airport Commission
A regional airport commission, which I must assume is established pursuant to the Regional Airport Act, A.C.A. §§ 14-362-101 through-129 (1987 Supp. 2005), is in my opinion a regional matter and not a municipal matter. See, e.g., City of Fort Smith v. Fort Smith Hous. Authority, 256 Ark. 254, 258, 506 S.W.2d 534 (1974) ("A city Housing Authority does not operate within the scope of `municipal affairs' (i.e., those affecting, germane to or concerning the municipality and its government) as distinguished from those state affairs excepted in the Home Rule Act."). Municipalities have authority only over municipal affairs and therefore could not by ordinance impact a regional affair. However, the written agreement to establish the authority required by A.C.A. § 14-362-103 would need to be analyzed as to the provisions for board members. In my opinion, a municipality may not pass an ordinance to term limit commissioners on a regional airport commission, though it may be possible to establish term limits for commissioners as part of the written agreement establishing the commission pursuant to A.C.A. § 14-362-103.
Board of Zoning Adjustment
The Board of Zoning Adjustment is established in the zoning ordinance of the city. A.C.A. § 14-56-416 (Repl. 1998). The membership on the commission is described only as follows: "The ordinance shall provide for a board of zoning adjustment, which may either be composed of at least three (3) members, or the [planning] commission as a whole may sit as the board of zoning adjustment." A.C.A. § 14-56-416(b)(1). The broad grant of authority to "provide for" the Board, coupled with the lack of other statutory qualifications for membership on the Board, in my opinion, demonstrate a necessarily incident power to establish qualifications for appointment to the board. In my opinion, it appears that a municipality may, by ordinance, enact term limits on the service of zoning board members.
Recreations and Parks Commission
The eligibility for service as a Commissioner of a Parks Recreation Commission is set forth in A.C.A. § 14-269-302 (Supp. 2005). Furthermore, A.C.A. § 14-269-302 specifically authorizes a commissioner to be reappointed without any qualifying language. Id. at (b)(2). As noted in discussion of the civil service commission above, in my opinion the statutory inclusion of eligibility requirements for service precludes a municipality from enacting additional eligibility requirements, such as term limits.
Regional Intermodal Facilities Board
The pertinent language in the Regional Intermodal Facilities Act, A.C.A. §§ 14-143-101 through-129 (Repl. 1998 Supp. 2005) is identical to the pertinent language in the Regional Airport Act. I refer to my response above addressing a Regional Airport Commission.
Housing Authority
In my opinion, a municipality may not impose term limits on commissioners of a Housing Authority established pursuant to A.C.A. §§ 14-169-201 through-240 (Repl. 1998). The Arkansas Supreme Court has stated that a Housing Authority is not a municipal affair. City of Fort Smith, supra at 258. Consequently, a municipality may not, by ordinance, exercise control over the housing authority. Id. at 259. In my opinion, a municipality may not impose term limits on a housing commissioner by ordinance because the authority is not a municipal affair subject to the powers of the municipality.
Criminal Nuisance Abatement Board
In my opinion, a municipality may not impose term limits on board members of a criminal nuisance abatement board, established pursuant to A.C.A. §§ 14-54-1701 through-1710 (Supp. 2005). By statute, all members of the criminal nuisance abatement board must be citizens of the creating city. A.C.A. § 14-54-1702. This is similar to the statutory requirements of elected county officials discussed in Allred, supra. In my opinion, as noted in addressing a civil service commission above, a municipality may not impose an additional eligibility requirement of prior service on membership on a criminal nuisance abatement board when the qualifications for service are delineated in the state statute.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
[1] Such dual service is no longer legal. Act 1924 of 2005, codified at A.C.A. § 14-14-1202 (Supp. 2005) specifically prohibits dual service on a city council and a quorum court.